David **BARGER**, Plaintiff,

v.

**CITY OF ST. LOUIS**, Defendant.

No. 79–103C(3).

United States District Court,
E. D. Missouri, E. D.

June 25, 1981.

Doris Gregory Black, St. Louis, Mo., for plaintiff.

Judith A. Ronzio, Asst. City Counselor, St. Louis, Mo., for defendant.

## MEMORANDUM

FILIPPINE, District Judge.

This matter is before the Court on plaintiff's claims for equitable relief, consisting of reinstatement with back pay, and for reasonable attorneys' fees. A jury, having heard this matter, has already determined that plaintiff was not entitled to damages for emotional distress as a result of his allegations that he was wrongfully discharged from his employment in retaliation for the exercise of his first amendment right to freedom of speech. After consideration of the testimony and exhibits introduced at trial, and the parties' stipulations and briefs, the Court hereby makes the following findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52.

### FINDINGS OF FACT

Plaintiff, David Barger, was employed by defendant, the City of St. Louis, in the Emergency Medical Services unit of the Department of Health and Hospitals as an Emergency Medical Technician I from October, 1974 until his termination in September, 1977.

In May, 1976, plaintiff first became involved in organizing the other employees in the Emergency Medical Services Department in order to seek improvements in the maintenance of the department's vehicles and the quality of its equipment. He held discussions with Doctors George Weddick and Allen Klippel regarding the adequacy of the department's equipment. He spoke with personnel in purchasing in an attempt to examine the records regarding purchases of equipment for the ambulances and wrote to Dr. R. Dean Wochner, Director of the Department of Health and Hospitals, in an effort to gain Dr. Wochner's assistance in obtaining permission to review the records.

In March, 1977, Florence Hill became Director of Emergency Medical Services. Shortly before her appointment, plaintiff and another Emergency Medical Technician (EMT), Steve Koenie and three or four other EMTs including Charles A. Long and Larry Harris, were involved in organizing the employees. They brought problems with equipment on the ambulances to the attention of their supervisors, Richard Davis and Charles Stevenson. Plaintiff and other employees met with Mrs. Hill twice to discuss the problems.

In September, 1977, plaintiff, Steve Koenie, and others circulated among employees a petition concerning the alleged lack of proper maintenance of the vehicles operated by the department of emergency medical services. Seventy-seven persons signed the petition. Plaintiff signed at number 50. Steve Koenie signed at number three. Larry Harris signed at line 48. R. Bauer signed at number one and James Motlick at number two. When the petition was presented to Mrs. Hill, she said that the employees should organize committees to deal with the problems because she was interested in the same problems. Plaintiff was not present when the petition was presented.

Plaintiff also posted in the garage a notice asking employees interested in forming "a fact-finding committee in regard to the bug on the public phone in the garage" to call him or to leave their name and phone number. He showed this notice to Mr. Davis, who was very understanding.

Plaintiff organized employees before a meeting with the Board of Aldermen, and he testified at the meeting. Dr. Wochner, Mrs. Hill, and Lambert Padberg, Hospital Executive II, were present. Mr. Harris and

Mrs. Hill also testified. No attempts were made to keep plaintiff from testifying.

Plaintiff never appeared on TV, radio, or in the newspapers. He was at a meeting in a church which was covered by TV. The meeting was designed to bring problems in the ambulance division to the public's attention. Mr. Long, who has left the job with the City and three other employees who are still employed by the City (Poindexter, Boyd, and Mayer) were also at the meeting. Mrs. Hill was also present.

On August 18, 1977, plaintiff was to report for work at 11:00 p. m. He was unable to report on time but did not call in to say that he would be late. He reported for duty just after midnight. He was suspended for two days and was informed that he was not to return to work until further notice.

On September 11, 1977, plaintiff was admitted to Deaconness Hospital. He did not know until he was released from the hospital on September 16, 1977 that he had been notified by letter dated September 9, 1977 and addressed to him at # 8 Portland Place to report for work September 12, 1977 at 11:00 p. m. When he returned home and saw the letter,* he reported for work in the evening. Mr. Stevenson sent him home.

On September 15, 1977, plaintiff was mailed a copy of a change in employee status form indicating that he was being dismissed from his position with the City because he had "failed to call in or report for duty as assigned per attached letter dated 9–9–77." His last day at work was listed as September 15, 1977 and his last day on the payroll as October 11, 1977.

Plaintiff appealed his termination to the City's Civil Service Commission. At the hearing held by the commission, Mrs. Hill testified that plaintiff was terminated because, when plaintiff failed to report for duty in September, she and his supervisor, Mr. Davis, conferred on his attendance record for the past twelve months and concluded that he had been absent and tardy too many days to allow him to continue as an EMT.

Plaintiff had been suspended four times for failure to report to work between September, 1975 and his August, 1977 suspension. Two of these suspensions were during the twelve-month period immediately preceding plaintiff's discharge. He was late to work and had his pay docked as a result many times. He did not work almost the entire month of June, 1977 because of illness. He failed to follow the department's regulation that while on disability leave, one was to send the office of the hospital commissioner a doctor's statement each time one was seen by a physician. On June 23, 1977, he was informed that unless he returned to work at 5:00 p. m. on June 26, 1977, he would be removed from the payroll until he did return. Mr. Davis and Mrs. Hill rated plaintiff's attendance as inadequate on his employee service rating for the periods ending March 1, 1977 and August 27, 1977.

Others who were active in organizing the EMTs and who signed the September petition are still with the City including Steve Koenie, Bob Mayer, R. Bauer and James Motlick. Charles Long's employment with the City terminated on July 11, 1979. Larry Harris was terminated without prejudice in November, 1978 because of an injury suffered in an auto accident.

## CONCLUSIONS OF LAW

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

Plaintiff maintains that the City of St. Louis dismissed him from his employment because he exercised his First Amendment right of free speech. The speech which plaintiff maintains was constitutionally protected consisted of his complaints about the maintenance of the vehicles and adequacy of the equipment in the Emergency Medical Services Department, which were made both privately within the Department of Health and Hospitals and publicly before the Board of Aldermen and in the meeting covered by the news media. Defendant contends that plaintiff was discharged, not because of his complaints, but because of

---

* Plaintiff was then living at 2019 Raven. He had not given his new address to his employer.

his excessive absenteeism and tardiness. According to plaintiff, this stated reason for his discharge, which was not given to plaintiff until the hearing of his appeal of his termination before the Civil Service Commission was merely a pretext.

■ It is well-settled that a government employee, who claims that he was discharged because he exercised his First Amendment rights, must show two things in order to make a *prima facie* case. He must show (1) that his conduct was constitutionally protected and (2) that this conduct was a "substantial" or "motivating" factor in the decision to terminate him. *Mt. Health City School District Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Schmidt v. Fremont County School District No. 25*, 558 F.2d 982 (10th Cir. 1977). If a plaintiff succeeds in carrying that burden, the government employer must show by a preponderance of the evidence that it would have reached the same decision regarding the plaintiff's employment even in the absence of the protected conduct. *Doyle, supra.*

■ While a government employee may not have his continued employment conditioned upon the relinquishment of his First Amendment right to free speech, *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), not all of a public employee's speech is constitutionally protected. Whether a public employee's speech is constitutionally protected depends upon the balance between the employee's interest in commenting upon matters of public concern and the interest of the governmental employer in promoting efficiency of the public service being performed. *Doyle, supra; Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

■ The Court concludes that plaintiff's speech was constitutionally protected. Plaintiff was speaking out on matters of public concern when he testified at the Board of Aldermen's meeting and when he participated in the meeting at the church covered by television. His speech, while critical of his employer, did not impede his performance or interfere with the regular operation of the ambulance division. *See Pickering, supra.*

However, the Court is convinced from a preponderance of the evidence that plaintiff's constitutionally protected conduct was not a "motivating" or "substantial" factor in the decision to terminate him although the Court doubts that it was. Steve Koenie, one of the self-described leaders of the employees' organization, is still in the ambulance division. Another, Larry Harris, although no longer with the City, was terminated without prejudice due to an injury. Poindexter, Boyd, and Mayer, employees who were present at the meeting which received news coverage, are still employed. The first two signers of the September petition are still with the City. There is nothing in the testimony to indicate that plaintiff's role in the organization was more likely to cause his termination than theirs. He did not draft the September petition, present it to Mrs. Hill, or sign it first. He received no coverage in the media. Moreover, plaintiff's concerns as well as those of the other employees coincided with those of Mrs. Hill, the director of the ambulance service.

■ Even if plaintiff's constitutionally protected conduct had been a "motivating" or "substantial" factor in defendant's decision to terminate plaintiff's employment, plaintiff could not prevail in this cause because defendant has showed by a preponderance of the evidence that it would have reached the same decision regarding the plaintiff's employment even in the absence of the protected conduct because of plaintiff's excessive tardiness and absenteeism, which had continued despite reprimands, docking of pay, and suspensions. As Mrs. Hill stated before the Civil Service Commission, the City cannot run its emergency vehicles if it doesn't have dependable employees there on time to man them. While the original reason given plaintiff for his dismissal mentioned only plaintiff's failure to report for duty as directed by the letter dated September 9, 1977, that failure was merely the last in a long list of absences and tardinesses in the past year, whose cumulative effect resulted in plaintiff's termination.

In accordance with the foregoing, plaintiff's claim for reinstatement will be denied, and judgment will be entered for defendant on plaintiff's cause of action. Because plaintiff has not prevailed in this action, his request for attorney's fees will also be denied.