Don M. **SCHMIDT**, Appellant,

v.

**FREMONT COUNTY SCHOOL DISTRICT NO. 25, STATE OF WYOMING, Dr. Ray Gossett, Dr. Harold Macon, Mrs. Gloria Adams, Jack Geraud, and Rev. Robert Moody, in their official capacities, and Mrs. Alice Kucera, in her official capacity but not individually, and James Moore, an individual, Appellees.**

No. 76–1237.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 18, 1977.

Decided July 27, 1977.

Charles E. Graves and Patrick E. Hacker, Cheyenne, Wyo., for appellant.

R. R. Bostwick, of Murane, Bostwick, McDaniel, Scott, Greenlee & Owens, Casper, Wyo., for appellees.

Before LEWIS, Chief Judge, and SETH and BARRETT, Circuit Judges.

SETH, Circuit Judge.

The plaintiff brought a civil rights action under 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments to the United States Constitution and Article 1, §§ 2, 6, 20, and 37 of the Constitution of the State of Wyoming for his termination as a public school principal. The plaintiff asserts that the termination was for constitutionally impermissible reasons and based on his statements made to the Board of Education on the career education program and football reserved ticket sales. The case was tried to the court without a jury, and judgment was for the defendants. Plaintiff has taken this appeal.

The plaintiff was initially hired by the Board as a principal at Riverton Senior High School for the school term of 1972–1973. He was a nontenured "initial contract teacher" as defined by the Wyoming Education Code. Section 21.1–152, Wyoming Statutes, 1957. The trial judge in his memorandum stated that before the plaintiff was hired, ". . . the defendant school district had gone through a tumultuous period of disruption and discord, in which student absenteeism was high, the school had a high dropout rate, sanctions had been imposed upon it by the Wyoming Education Association, the high school principal had been ousted from the position, the next principal lasted only a few days, and a successor, who had then filled out the term, declined to accept the job again."

During his first year as principal, the plaintiff had a heated argument with the Board of the Fremont County School District on his views of the organization and administration of the school's career education program. From this meeting it was evident that the Board was firm on its views on the career education program. During this exchange, the plaintiff referred to the school as a "rag tag high school," and was critical of the career education director. Some of the Board members were surprised, shocked, and offended by the plaintiff's actions.

The plaintiff also disapproved of the Board's policy of allowing parents of the members of the athletics letter club to sell reserved seats to the high school football games, and expressed his views at a Board meeting. He told the Board that this practice would lead to poor public relations, administration problems, and require additional police protection of the games. The Board decided against the plaintiff. A confrontation later ensued with the football coach on this issue in front of some of the students, for which the plaintiff later apologized. The plaintiff was adamant in his opposition to this policy, and apparently failed to provide adequate policing for control of seating at the football games. The Board viewed this as a lack of cooperation in implementing its policies.

The plaintiff was however rehired for the 1973–1974 academic year under the status of an initial contract teacher.

The major concern of the Board was the school's high absenteeism. They wanted a stronger program to correct this problem. The plaintiff delegated responsibility for this matter to his assistant principal. No improvement resulted, and some of the Board members were disappointed when

the plaintiff recommended the renewal of the assistant principal's contract. The Board chairman told the plaintiff in January 1973 that if attendance did not improve, he would vote not to renew plaintiff's contract. The plaintiff continued to delegate the responsibility for correction of the absenteeism problem, and there resulted very little improvement in attendance.

In the fall of 1973 a student who informed on a narcotics pusher was ridiculed at the high school and physically beaten. Fearing for his safety, his parents placed him in another school and the Board was asked to pay his tuition there. The Board felt that the plaintiff had not handled this situation properly because the victim was forced to leave school, and not his assailants, although the victim refused to identify his assailants.

In January 1974, after the plaintiff's informal discussion with the Board on the renewal of his contract, the Board voted not to renew it. The general reasons given were that he did not meet the Board's expectations with his performance and the Board wanted stronger leadership and lacked confidence in him. The trial judge concluded that:

"These conclusions were based on a variety of grounds, such as tactless and unprofessional comments about a fellow administrator and the school system at a board meeting, the plaintiff's appearance at a board meeting to oppose a board policy on reserved seating at football games and his subsequent lack of cooperating in implementing it, lack of a strong program to prevent student absenteeism and to improve attendance, his failure to recommend non-renewal of the assistant principal's contract in January, 1973, his suspected failure to make teacher evaluations because of his turning in evaluation sheets unsigned by the teacher, his lack of rapport with the students, an altercation with the football coach, and disagreement over the handling of the case of a student who was harmed as a police informer by fellow students."

The trial court found that the nonrenewal was not in retaliation for his statements in opposition to the career education system or the reserved football game seats. He was heard on these two occasions and was rehired for the following academic year. The court also found that these statements were not on issues of general concern, but instead dealt with the internal operations of the school system which does not trigger First Amendment protection. The balance fell in favor of the State because the problem was one of "harmony among co-workers" coupled with the need to stabilize a troubled school system. *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811.

The trial court concluded that plaintiff also failed to meet his burden of proof on these alleged constitutional violations because they were not shown to be the real, primary, and only reasons for his termination. The court found that the unimproved school attendance was the reason for the termination. The plaintiff did not sustain any monetary damages which he alleged in his complaint because he was employed elsewhere at a higher salary. From the dismissal of his complaint after an evidentiary hearing was held, the plaintiff appeals.

The plaintiff on appeal asserts that the court erred in finding that the statements were not protected by the First Amendment, in applying the rule of the "real, primary, and only reasons" for his termination, and in failing to consider violations of his academic freedoms. It is also urged that when considering the Wyoming State constitutional claims, the court failed to follow the state rule for partially impermissible cause in terminating.

Under the burden of proof enunciated in *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471, the plaintiff must show that "his conduct was constitutionally protected." The plaintiff simply failed to meet this burden. As the trial court found, the statements were not on issues of general public concern but statements at the school on the internal affairs of the school system.

They were part of his official functions. These statements do not invoke First Amendment protection. *Butler v. Hamilton,* 542 F.2d 835 (10th Cir.); *Clark v. Holmes,* 474 F.2d 928 (7th Cir.); *Chitwood v. Feaster,* 468 F.2d 359 (4th Cir.). The balance falls in favor of the school district since it was not only a question of maintaining "harmony among co-workers," but one of administering its policies effectively. *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811. Furthermore, to hold otherwise would preclude discussion between a school board and its employees on the formulation and administration of matters of policy in the school system. A give and take is expected in discussions as to internal issues.

The plaintiff also failed to meet his *Mt. Healthy* burden in showing that his protected conduct was the "substantial" or "motivating" factor for his termination. Under the findings, these statements were not a substantial factor in his termination, although they may have influenced the Board on a subjective level as to the plaintiff's ability to stabilize a faltering school system. As stated above, the school system was in a disorganized state and the Board was in need of effective leadership. Even after the plaintiff made these statements, the plaintiff was rehired for the following academic year but warned of his failure to improve the attendance.

The plaintiff urges that the court erred in failing to consider whether the termination of the plaintiff's employment was in violation of his academic freedom under the First Amendment. However, we find no such issue raised in the pleadings or in the trial court.

The state claim must fail as a pendent claim.

AFFIRMED.