Terry MARCUM, LaDawn Whitlock, and Dinah Christian, Plaintiffs-Appellants,

v.

Amy DAHL and Wade Walker, Defendants-Appellees.

No. 80–1182.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Aug. 17, 1981.

Decided Aug. 24, 1981.

1. I do not believe that this issue should be disposed of on the basis of ambiguous and confusing statements as to the nature of the appellants' claim made by counsel at the hearing on summary judgment in the district court. I do not find anything that can fairly be construed as a waiver of Dreisbach's claim that he had been subjected to a boycott.

Billy J. Hendrix, Oklahoma City, Okl., for plaintiffs-appellants.

Stanley M. Ward and Kurt Ockershauser, University of Oklahoma Legal Dept., Norman, Okl. and Robert D. Looney, Sr., Oklahoma City, Okl., for defendants-appellees.

Before McWILLIAMS and BREITEN-STEIN, Circuit Judges, and CHILSON *, District Judge.

## PRELIMINARY STATEMENT

CHILSON, District Judge.

The appellants will be referred to herein as "plaintiffs" and the appellees as "defendants".

In the fall of 1977, the plaintiffs enrolled as students at the University of Oklahoma. They received basketball athletic scholarships under an agreement which provided "This award may be renewed as long as you remain eligible in accordance with the AIAW Rules." (Association for Intercollegiate Athletics for Women).

In the spring of 1978, the plaintiffs were notified that their athletic scholarships would not be renewed. Pursuant to 42 U.S.C. § 1983, plaintiffs instituted this action to recover the value of the scholarships for three additional academic years, and other damages, alleging the refusal to renew the scholarships violated their First Amendment right of freedom of speech and deprived them of their property rights without due process of law in violation of the Fourteenth Amendment.

Trial was had to a jury which rendered a verdict in favor of each of the plaintiffs in the amount of $5100 which the jury found to be the value of each scholarship for three additional academic years.

Thereafter the trial court granted defendants' motion for judgment notwithstanding the verdict and entered judgment dismissing plaintiffs' actions.

The plaintiffs appealed.

## SUMMARY OF FACTS

The plaintiffs in the fall of 1977 became members of the women's basketball team and participated as such until the conclusion of the season on March 9, 1978.

After a review of the evidence, the Court adopts the plaintiffs' summary of uncontroverted essential facts, to wit:

* Of the United States District Court for the District of Colorado, sitting by designation.

Somewhere during the months of December and January of the 1977–78, basketball season, a split developed within the O.U. Women's Basketball Team with the scholarship athletes on one side and the non-scholarship athletes on the other. The scholarship athletes felt that the better and more competent coach (assistant coach John Kingery) was getting shoved aside and that they were suffering because of this. The non-scholarship athletes gave their full support to the head coach Cathie Schweitzer. In addition, the scholarship athletes were disturbed by the lifestyle of their head coach. On January 16th these plaintiffs took their grievances to the defendant Amy Dahl, the athletic director for women's sports at O.U. Subsequently, these plaintiffs met with Amy Dahl and Wade Walker (athletic director at O.U.) to discuss their grievances on January the 18th, 1978. The plaintiffs were told that their problems would be considered and that no grudges would be held. Then, on March the 10th, 1978, after the last game of the season, these same plaintiffs commented to the press that if Miss Schweitzer was hired to coach the following year, they would not play.

What happened after March 10 is also uncontroverted.

On March 31, 1978, the defendant, Amy Dahl, personally notified each of the plaintiffs that she and the defendant, Wade Walker, had decided the scholarships would not be renewed because of plaintiffs' attitude and behavior and if they desired to contest this decision, they had a right to a hearing.

On April 12, 1978, the plaintiffs were notified in writing that they could have a hearing to contest the non-renewal of the scholarships; that a review panel from the Athletic Council was being formed for this purpose, and if plaintiffs desired a hearing, they were to notify Catherine Bennett, Chairwoman of the Athletics Council by April 21.

On April 18, 1978, the plaintiffs requested such a hearing but later withdrew the request.

The review panel was established and a hearing was set for June 8. Plaintiffs' counsel was notified of the hearing by letter dated June 1, 1978, but neither the plaintiffs nor their counsel appeared.

The Committee, on June 8, approved the non-renewal of the scholarships.

On October 17, 1978, the complaint in this action was filed.

### FIRST AMENDMENT CLAIM

Plaintiffs contend that the refusal of the defendants to renew their scholarships was motivated by the plaintiffs' statement to the press, that the comments to the press were constitutionally protected by the First Amendment, and that the failure to renew the scholarships was in derogation of their First Amendment rights.

■ The trial court found from the evidence and all reasonable inferences to be drawn therefrom that plaintiffs' comments to the press were not on matters of public concern and therefore were not constitutionally protected by the First Amendment citing, *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) and *Schmidt v. Fremont County School District No. 25*, 558 F.2d 982 (10th Cir. 1977).

We concur with the trial court's conclusion that the comments of the plaintiffs to the press did not involve matters of public concern.

The problems created by the controversy between the scholarship and non-scholarship players were internal problems with which the defendants were required to deal in their official capacities. Such matters are not of general public concern and the plaintiffs' comments to the press did not invoke First Amendment protection. *Schmidt v. Fremont School District No. 25*, 558 F.2d 982 at 984 (10th Cir. 1977).

The trial court also found that plaintiffs' comments to the press were not a substantial or motivating factor in the decision of the defendants not to renew the scholarships. It is admitted, however, that the defendants in arriving at their decision were aware of and considered the plaintiffs' statements to the press.

■ The plaintiffs' comments to the press were the final episode in a controversy which had raged for many months between the scholarship and non-scholarship players over who should be the head coach. This controversy resulted in disharmony among the players and disrupted the effective administration of the basketball program. The plaintiffs' participation in this controversy during the course of the basketball season provided a sufficient basis for the non-renewal of their scholarships.

Plaintiffs' statement to the press after the close of the season was, in effect, a reiteration of their opposition to Miss Schweitzer as the coach, which they had expressed over a period of many months during the basketball season, but adding an ultimatum that if Miss Schweitzer was retained as coach, they would refuse to play under her.

This Court held in *Butler v. Hamilton*, 542 F.2d 835 at 839 (10th Cir. 1976):

The exercise of a constitutionally protected right by a public employee does not serve as a curative for all prior misconduct during the course of employment. A public employee cannot expunge all prior transgressions from his employment record by merely exercising a constitutional right. A discharge for exercise of first amendment rights is impermissible. *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811; *Bertot v. School Dist. No. 1*, 10 Cir., 522 F.2d 1171, 1183. The exercise of a first amendment right, however, does not insulate a public employee from being discharged for occurrences prior to the exercise of the right.

Applying the foregoing to the uncontroverted facts of this case, we conclude that the plaintiffs' First Amendment rights

were not violated by the defendants' refusal to renew the plaintiffs' athletic scholarships.

## DENIAL OF DUE PROCESS

 Plaintiffs contend that they were deprived of their property rights (a renewal of their scholarships for three additional academic years) without due process of law. This action in no way affects the scholarships awarded to plaintiffs for the 1977–78 academic year.

Upon facts which this Court has previously found uncontroverted, we conclude that the contention is without merit.

It is uncontroverted that on March 31, 1978, plaintiffs were advised of the decision of defendants not to renew plaintiffs' scholarships and if they desired to contest the decision, they had a right to a hearing. On April 12, 1978, the plaintiffs were again notified, this time in writing, that they could have a hearing to contest the non-renewal; that a review panel was being formed for this purpose, and if plaintiffs desired a hearing, they were to so indicate by April 21. On April 18, 1978, plaintiffs requested such a hearing, but thereafter withdrew the request. Nevertheless, a review panel was established and a hearing was set for June 8. Plaintiffs' counsel was notified of this hearing by letter of June 1, 1978. Neither the plaintiffs nor their counsel appeared at the hearing and the review panel at the hearing approved the non-renewal of the scholarships.

Plaintiffs complain that a hearing should have been had before the decision was made by the defendants that the scholarships would not be renewed and cites in support thereof, *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Fuentes holds that "if the right to notice and a hearing is to serve its full purpose, then it is clear that it must be granted at a time when the deprivation can still be prevented." *Fuentes, supra*, at 81, 92 S.Ct. at 1994.

Since the renewed scholarships would not have been effective until the fall of 1978, the hearing on June 8 was in ample time to permit the review board to overrule the defendants' decision and renew the scholarships long before the next academic year began.

 Additionally, the plaintiffs did not request an earlier hearing date and by refusing to participate in the due process proceedings, are in no position to now complain that an earlier hearing should have been had.

We conclude that the plaintiffs were not denied due process of law.

The judgment of dismissal of this action by the trial court is hereby affirmed.