Thomas G. KOCH, Plaintiff-Appellant,

v.

CITY OF HUTCHINSON, et al., Defendant-Appellee.

No. 83–2561.

United States Court of Appeals, Tenth Circuit.

March 27, 1987.
Rehearing Granted April 29, 1987.

Fred W. Phelps, Jr., of Phelps Chartered, Topeka, Kan., for plaintiff-appellant.

Robert L. Howard, M. Kathleen Babcock, Loran J. Lemon of Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., and Phillip H. Alexander, City Atty., Hutchinson, Kan., for defendant-appellee.

Before LOGAN, SETH, Circuit Judges and KANE, District Judge *.

KANE, District Judge.

Thomas G. Koch was awarded $100,000 by a jury on his claim that the City of Hutchinson, Kansas abridged his right of free speech as guaranteed by the First Amendment of the United States Constitu-

tion. The trial court then granted defendants' motion for judgment notwithstanding the verdict, set aside the verdict and entered judgment in favor of the City of Hutchinson. On appeal Koch raises a number of issues which he asserts requires reversal: (1) Whether the trial court erred in granting defendants' partial summary judgment on Koch's due process claims, finding such claims barred by res judicata; (2) Whether the trial court properly declined to instruct the jury on punitive damages; (3) Whether the trial court erred by directing a verdict against Koch on his conspiracy claim under 42 U.S.C. § 1985; (4) Whether the trial court erred by directing a verdict in favor of the individual City Commissioner—defendants; (5) Whether substantial evidence supports the jury verdict in favor of defendants Pyle and Jones; (6) Whether the trial court erred in granting defendant City of Hutchinson a judgment n.o.v. on the grounds that Koch's written opinion that a fire he investigated was caused by arson is not constitutionally protected; and (7) Whether the trial court erred in denying Koch's motion to reconsider, alter or amend. For the reasons set forth below, the judgments of the trial court are affirmed in part and reversed in part.

## PROCEDURAL BACKGROUND

This action arose from events culminating in the demotion of plaintiff from Fire Marshal to Fire Prevention Inspector on July 23, 1979. On September 19, 1979, Koch filed a state court mandamus action, *Koch v. Martindell, et al.*, No. 79 C 403, in the District Court of Reno County, Kansas. A bench trial was held on that case on June 23, 1980. A journal entry in that case was filed on August 28, 1980, finding against plaintiff on all counts. Koch appealed that judgment to the Court of Appeals of the State of Kansas. The Kansas Court of Appeals affirmed the state trial court's judgment in a Memorandum Opinion filed

---

* Honorable John L. Kane, Jr., United States District Judge for the District of Colorado, sitting by designation.

on November 5, 1981. Koch did not pursue an appeal to the Kansas Supreme Court.

Koch filed this civil rights action in the United States District Court for the District of Kansas alleging causes of action based upon the First Amendment, the Fourteenth Amendment, 42 U.S.C. §§ 1983, 1985, 1986 and 1988. Citing res judicata, the district court granted defendant's motion for partial summary judgment on plaintiff's procedural due process claim on May 11, 1983. A jury trial was commenced on August 15, 1983 and ended on September 2, 1983. At the close of the plaintiff's case, the district court granted a directed verdict in favor of the city commissioner defendants Schrag, Bornholdt, Gingerich, Corey and Robinson. The district court also directed a verdict in favor of defendants on Koch's conspiracy claim, 42 U.S.C. §§ 1985 and 1986. The jury returned a special verdict accompanied by special interrogatories on September 2, 1983. The jury found defendants Pyle and Jones not liable. The jury found the City of Hutchinson liable for abridging Koch's First Amendment rights to freedom of speech.

On September 12, 1983, defendant City filed a motion for judgment notwithstanding the verdict. The court granted defendants' motion to set aside the verdict and entered judgment in favor of defendant city. Plaintiff filed his notice of appeal on November 28, 1983.

## FACTS

Thomas Koch was employed by the City of Hutchinson Fire Department for approximately 19 years. From November 2, 1976 until his demotion to Fire Prevention Inspector on July 23, 1979, Koch served as Fire Marshal. As Fire Marshal, Koch's duties included supervision of fire prevention inspectors, responsibility to the fire chief, and investigation of all fires.

The City of Hutchinson is a municipal corporation of the first class, organized under the laws of Kansas. At all times pertinent to this suit, defendants Schrag, Bornholdt, Gingerich, Carry and Robinson were the City Commissioners. These defendants constituted the governing body of Hutchinson. Defendant Pyle was the City Manager, responsible for the entire administration of the City. Defendant Jones was the Fire Chief of the Hutchinson Fire Department.

On May 11, 1979, in execution of their official duties, Koch and two other inspectors investigated a house fire in which a two year old girl burned to death. On May 24, 1979 Koch submitted his fire investigation report, concluding that the cause of the blaze was aggravated arson. This conclusion was contrary to Koch's preliminary statements to the effect that the fire was accidental. As well, the report omitted discussion of a May 22, 1979 General Laboratory's report that a cracked glass valve, previously sent to General Laboratory by Koch, was a possible source of the fire.

Dissatisfied with Koch's report, County Attorney O'Sullivan—a non-party—sought written reports as to the fire's cause from the two other fire investigators. Both investigators opined the fire was an accident. On May 23, 1979, at the behest of O'Sullivan, Special Agent Maudlin of the Kansas Bureau of Investigation also investigated the fire. With little cooperation from Koch, Special Agent Maudlin concluded there was no evidence upon which a finding of arson could be made.

On May 25, 1979, O'Sullivan, not Koch, released the contents of Koch's report to the press. "I had been contacted by a Hutchinson news reporter asking me about the investigation, and at that time, I told her about Koch's report and conclusion." On June 5, 1979, an article appeared in the Hutchinson paper saying: "[A]ccording to reports released Tuesday morning by Reno County attorney Joe O'Sullivan, the official cause of the fire is listed as aggravated arson by Hutchinson fire marshal Tom Koch." Koch testified explicitly that he did not provide a copy of his report to the press.

A meeting was held on May 30, 1979 between O'Sullivan, Maudlin, Koch and Jones. A raging hostility developed between Koch and O'Sullivan. Shortly following this meeting the local media published the debate as to the fire's origin and the intragovernmental haggling.

Sometime after June 5, 1979, O'Sullivan first heard about the General Laboratory tests, known to Koch yet omitted from his report. O'Sullivan instigated a police investigation, borne out of animus and a belief that the omission constituted official misconduct. Investigating Detective Snell reported he had encountered hostility and belligerence from Koch.

Following this report, O'Sullivan turned the matter over to Fire Chief Jones. O'Sullivan wrote, in a July 13, 1979 letter that he, the police, and the KBI had an absolute lack of confidence in Koch's ability to discharge his responsibilities as Fire Marshal. O'Sullivan further noted he would no longer rely on Koch's opinions as bases for criminal charges nor sponsor him as a witness.

On Monday, July 16, 1979, City Manager Pyle and Fire Chief Jones discussed the situation and decided to place Koch on a paid leave of absence pending further investigation—the "troubled employee's program". In the course of the investigation, Jones met with Koch to hear his side of the story. Upon conclusion of the investigation, Jones and Pyle met and determined because of the fire inspection report and its ramifications, demotion was called for. Koch was notified of such on July 23, 1979. After the demotion, Koch took a substantial amount of sick leave due to an unrelated injury until he took disability retirement from the Fire Department on August 1, 1980.

I

WHETHER THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT ON KOCH'S DUE PROCESS CLAIMS, FINDING SUCH CLAIMS BARRED BY RES JUDICATA

■ In his complaint, Koch contends his demotion without a hearing was a violation of procedural due process as guaranteed by the Fourteenth Amendment. By a memo-

randum and order of May 11, 1983, the district court granted defendants' motion for partial summary judgment on Koch's procedural due process claim. The district court pronounced the judgment of the state court collaterally estopped Koch from re-litigating this claim. A trial court's granting of a motion for summary judgment "may be affirmed if any proper grounds exist to support the ruling". *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1124 (10th Cir.1979), *cert denied*, 444 U.S. 856, 100 S.Ct. 116, 62 L.Ed.2d 75 (1979).

> The state trial court found
>
> The plaintiff has no sufficient property interest in the rank of Fire Marshal so as to be entitled to a due process hearing.

Journal of Judgment, *Koch v. Martindell, et al.*, No. 79 C 403, August 28, 1980. The federal trial court later found Koch

> was afforded a full and fair opportunity to litigate his procedural due process claims of a property interest in his position as Fire Marshal and of a liberty interest in good name and reputation in the community.

Memorandum and Order, May 11, 1983.

■ Res judicata encompasses two distinct doctrines, issue preclusion and claim preclusion.[1] For present purposes, issue preclusion prohibits the relitigation of facts and questions that were in issue in a previous action between the same parties, and which were actually litigated. *See generally*, 46 Am.Jur.2d, Judgments §§ 415–429 (1969). Claim preclusion, on the other hand, prohibits a party from re-asserting a previously adjudicated cause of action. Claim preclusion, unlike issue preclusion, prohibits a party from asserting any matter that might have been asserted in the previous cause of action. *See generally, Id.*, §§ 404–414.

■ 28 U.S.C. § 1738 directs us to give a Kansas state court judgment "the same full faith and credit … as [it has] by law or usage in the courts of [Kansas]. We must, therefore, determine what effect a

---

1. Courts have used various terms to describe these two doctrines. *See,* 46 Am.Jur.2d, *Judgments* § 397 (1969). Although modern usage normally refers to claim preclusion as res judi-

cata and issue preclusion as collateral estoppel, we will use both terms, where possible, to avoid confusion.

Kansas state court would give to the previous judgment if it were hearing this case.[2]

Here, whether Koch has a due process right to a hearing was actually litigated. The federal trial judge found whether Koch had a due process right to a hearing had actually been litigated in the state mandamus action and ensuing state appeal. This was proper. A collateral estoppel, or issue preclusion, analysis is therefore appropriate.

The Supreme Court of Kansas has stated that

> the doctrine of collateral estoppel prevents a second litigation of the same issues between the same parties or their privies even in connection with a different claim or cause of action.

*Williams v. Evans,* 220 Kan. 394, 552 P.2d 876, 878 (1976).

Contrary to plaintiff's argument, it does not matter that the state suit was in the nature of mandamus, seeking injunctive relief, while the federal suit seeks damages. The issue of whether Koch had a property or liberty interest in not being demoted from Fire Marshal is synonymous in both cases. Issue preclusion does not require identity of cause of action. *Id.; United States v. Mendoza,* 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379, 383, (1984) ("Under the judicially developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation.")

A number of federal and Kansas decisions specifically hold issues litigated and determined in a mandamus proceeding may not be relitigated in a subsequent suit for damages. *Plummer v. Scott,* 96 Kan. 390, 151 P. 1115, 1116 (1915); *Brown v. De-*

*Layo,* 498 F.2d 1173, 1175 (10th Cir.1974) ("A prior court adjudication of a federal constitutional right bars a subsequent federal action seeking vindication of the same right ... the rule applies even though the federal action is brought under §§ 1981 and 1983. The Civil Rights Act is not a vehicle for collateral attack on a final state court judgment").

Koch is correct in stating a party being estopped must have had a "full and fair opportunity to litigate the particular issue". *Blonder-Tongue Laboratories, Inc. v. University of Illinois,* 402 U.S. 313, 328–29, 91 S.Ct. 1434, 1442–43, 28 L.Ed.2d 788 (1971). He is incorrect, however, in asserting he was denied such an opportunity. We are not convinced that Koch was not allowed to present evidence and argue his cause. His appellate brief argued the evidence submitted at trial entitled him to a due process hearing; no denial of an opportunity to litigate the due process issue was even argued to the Kansas Court of Appeals. Koch fails to particularize his problems with the trial court's disposition of his procedural due process claim.

We cannot hold the federal trial court erred in precluding litigation of the due process issue. Summary judgment in the favor of defendants on plaintiff's procedural due process claim is affirmed.

## II

### WHETHER THE TRIAL COURT PROPERLY DECLINED TO INSTRUCT ON PUNITIVE DAMAGES [3]

█ It is error for a trial judge to refuse a tendered instruction if it is supported by the evidence. Conversely, the refusal is justified if, in the court's judgment, the instruction is not warranted by the evidence. *Lupton v. Torbey,* 548 F.2d

---

**2.** Federal law and Kansas State law on collateral estoppel—issue preclusion are nearly identical. *Compare annot.* 58 L.Ed.2d 938, § 2(b) (1980) (federal collateral estoppel requirements) *with Williams v. Evans,* 220 Kan. 394, 552 P.2d 876 (1976). Accordingly, federal opinions reflect Kansas judicial authority on res judicata.

**3.** Koch asserts that the punitive damages claim was dismissed, but the record fails to support

this. Rather, it appears the district judge simply declined to instruct the jury on punitive damages. Normally, in order to preserve a failure to instruct for appeal, an objection must be made on the final record. No such objection has been made. However, because there is some confusion as to why the punitive damage claims never made it to the jury, this requirement is waived.

316, 320 (10th Cir.1977); 9 C. Wright & A. Miller, *Federal Practice and Procedure,* ¶ 2556 (1971).

■ Municipalities are necessarily immune to punitive damages. *Newport v. Fast Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). The trial court was correct in not instructing on exemplary damages *vis. a vis.* the City.

With respect to the individually named defendants, punitive damages are available in a civil rights action only when

the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.

*Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 651 (1983).

■ The facts show Jones and Pyle conducted a good faith investigation before demoting Koch. The special jury verdict that Pyle and Jones acted in good faith supports this finding. The City Commissioners were not involved, nor had they the authority to be involved, with Koch's demotion. As noted in greater depth below, the structure of the city government precluded the commissioners from participating in any conduct, much less any motivated by animus, with regard to Koch's demotion.

It was not error for the trial judge to refuse a punitive damages instruction.

### III

### WHETHER THE TRIAL COURT ERRED BY DIRECTING A VERDICT AGAINST KOCH ON HIS CONSPIRACY CLAIM, 42 U.S.C. § 1985

■ This Circuit applies a standard that "a directed verdict is justified 'only if the proof is all one way or so overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion.'" *Kiner v. Northcutt,* 424 F.2d 222, 223 (10th Cir.1970).[4] Koch has the burden of specifi-

cally demonstrating the clear errors in the findings of the trial court. *Butler v. Hamilton,* 542 F.2d 835, 838 (10th Cir.1976). The trial court's findings are presumed to be correct.

■ 42 U.S.C. § 1985 prohibits two or more people from conspiring to deny a person equal protection of the law. However, it is abundantly clear that Koch must prove the conspiracy was race or class based.

The language of requiring intent to deprive of equal protection or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal employment rights secured by the law to all.

*Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338, 348 (1970); *see also, United Brotherhood of Carpenters v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) and *Wilhelm v. Continental Title Co.,* 720 F.2d 1173, 1175 (10th Cir.1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1601, 80 L.Ed.2d 131 (1984).

Koch did not establish any race or class based "invidiously discriminatory animus" on the part of the defendants at trial. Accordingly, the trial court's directed verdict on the § 1985 claim was correct.

### IV

### WHETHER THE TRIAL COURT ERRED BY DIRECTING A VERDICT IN FAVOR OF THE INDIVIDUAL CITY COMMISSIONERS AT THE CLOSE OF KOCH'S CASE[5]

■ The federal district court directed a verdict in favor of city commissioner defendants Schrag, Bornholdt, Gingerich, Corey and Robinson at the close of plaintiff's case. Koch has failed to prove the

---

4. We are aware of the language in *Irving v. Dubuque Packing Co.,* 689 F.2d 170, 173 (10th Cir.1982) which incorrectly cites *Kiner* and uses the term "clearly erroneous." We eschew such use, however, as it creates confusion and deviates from the standard correctly announced in *Kiner.*

5. Koch again mischaracterized judicial activity as a dismissal. Disposition of claims by the court in the course of a jury trial constitutes a directed verdict. Fed.R.Civ.P. 50(a); *see* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2523 (1971).

directed verdict is erroneous. The city commissioners did not participate in Koch's demotion. Pursuant to § 2–21 of the Hutchinson City Code, it is the city manager who "shall be responsible for the administration of all the affairs of the city ... (and) shall appoint and remove all heads of departments and all subordinate officers and employees of the city." It is not erroneous to hold, therefore, that no reasonable jury could find the city commissioners individually liable for any deprivation of rights.

Plaintiff asserts the basis for the direction of a verdict was the city commissioners qualified good faith immunity. The record does not support this contention. Assuming the city commissioners' qualified good faith immunity caused the directed verdict, plaintiff still has not established the directed verdict was erroneous.

In *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, the Supreme Court held

> Government officials performing discretionary duties generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Entitlement to Fourteenth Amendment constitutional due process in a demotion was not clearly established at the time of defendant's action. The state court ruling demotion impinges no property or liberty interest, the *sine qua non* of due process protection, evinces as much. Plaintiff's First Amendment claim is also not clearly established. The federal district court's judgment notwithstanding the verdict, and the close call this issue presents, indicate the murky nature of this claim's viability. Notwithstanding our conclusion that Koch's speech is protected as it relates to a matter of public concern, a reasonably objective person would not necessarily have known demotion was clearly violative of First Amendment rights.

The directed verdict in favor of defendant city commissioners is affirmed.

## V

### WHETHER SUBSTANTIAL EVIDENCE SUPPORTED THE JURY VERDICT IN FAVOR OF DEFENDANTS JONES AND PYLE

 The jury, in a special verdict, specifically found defendants not liable for the demotion of Koch in violation of 42 U.S.C. § 1983. In *White v. Conoco, Inc.,* 710 F.2d 1442, 1443 (10th Cir.1983), we stated the rules for review of a jury verdict:

> We undertake our review of the evidence in the record in the light most favorable to the prevailing party ... with the rules firmly in mind that the appellate court does not retry the facts and that the party seeking to set aside the jury verdict must demonstrate trial errors which constitute prejudicial error or that the verdict is not based on substantial evidence ... Jury findings on sharply conflicting evidence are conclusively binding on appeal inasmuch as jurors are charged with the exclusive duty of assessing the credibility of witnesses and determining the weight to be given to their testimony.

Koch contends the verdict is not based on substantial evidence and is contrary to the evidence. However, for a litigant to receive appellate review of a jury verdict for want of sufficient evidence, he must first have moved for a directed verdict before submitting the issue to the jury. The record fails to disclose Koch has properly preserved the issue for appeal. In *Brown v. Poland,* 325 F.2d 984, 985–86 (10th Cir. 1963), we stated the applicable rule:

> Plaintiff asserts that no substantial evidence supports the verdict and that the verdict is against the weight of the evidence. He made no motion for a directed verdict in the trial court ... Failure to move for a directed verdict bars appellate review of the sufficiency of the evidence.

*See also, Holmes v. Wack,* 464 F.2d 86, 89 (10th Cir.1972).

Accordingly, the jury's verdict regarding the non-liability of Jones and Pyle is affirmed.

## VI

### WHETHER THE TRIAL COURT ERRED IN GRANTING DEFENDANT CITY OF HUTCHINSON'S JUDGMENT n.o.v. ON THE GROUND THAT KOCH'S FIRE INVESTIGATION REPORT WAS NOT PROTECTED SPEECH

"The issue" the trial court noted in granting city defendant's motion for judgment notwithstanding the verdict, " . . . is whether plaintiff's opinion prepared in the course of his duties as fire marshal is protected speech under the First and Fourteenth Amendments". In this context the district court concluded, as a matter of law under *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), that the "speech involved in this case cannot be fairly characterized as relating to a matter of 'public concern' and therefore . . . is not protected under the First and Fourteenth Amendments". Memorandum and Order, October 18, 1983, p. 3. It is not disputed *Connick* provides if speech cannot be characterized as constituting speech on a matter of public concern, it is unnecessary for the court to scrutinize the reason for the ensuing discharge.

■ When a constitutional right is at issue our decision is not informed by a clearly erroneous standard. "[T]he inquiry into the protected status of speech is one of law, not fact", *Connick*, 461 U.S. at 148, n. 7, 103 S.Ct. at 1690, n. 7, 75 L.Ed.2d at 720, n. 7, so "we cannot avoid making an independent constitutional judgment on the facts of the case". *Id.*, 461 U.S. at 150, n. 10, 103 S.Ct. at 1692, n. 10, 75 L.Ed.2d at 722, n. 10. In reviewing a judgment n.o.v. the evidence must be considered in "the light most favorable to the party against whom the motion is made", *Moskowitz v. Peariso*, 458 F.2d 240, 244 (6th Cir.1972), "this being the point of view which was accepted by the jury". *Serratoni v. Chesapeake and Ohio Railway Company*, 333 F.2d 621, 626 (6th Cir.1964).

■ In *Wilson v. City of Littleton, Colo.*, 732 F.2d 765 (10th Cir.1984), we stated in determining whether a public employee's First Amendment rights were violated the court must (1) consider whether the employee's speech related to a matter of public concern, and then (2) balance the interests of a public employee, as a citizen, in commenting upon matters of public concern against the interests of the public entity, as an employer, in promoting efficiency of the public services it performs, (the *Pickering* test).

■ We hold that Koch's speech is constitutionally protected under *Connick v. Myers*. "Whether an employee's speech addresses a matter of public concern," the Supreme Court held, "must be determined by the content, form and context of a given statement, as revealed by the whole record." *Id.*, 461 U.S. at 147–148, 103 S.Ct. at 1690, 75 L.Ed.2d at 720 [6]. This case is analogous to *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). In that case the court held impermissible under the First Amendment the dismissal of a high school teacher for openly criticizing the Board of Education on its allocation of school funds between athletics and education and its methods of informing taxpayers about the need for additional revenue. *Pickering's* subject was "a matter of legitimate public concern (upon which) free and open debate is vital

---

**6.** Defendants erroneously argue we should consider plaintiff's internal arson investigation report in a vacuum, without regard to the media publicity nor "plaintiff's oral remonstrations during the applicable period." Defendants' brief at p. 35. This would contravene the Supreme Court's mandate that the "content, form, and *context*" be addressed. In this light, it has been noted that "the court's focus on 'context' leads to the conclusion that an . . . issue already in the public realm is ipso facto of public concern. If the employee 'speaks' in public or if her speech relates to an issue 'in the news,' the speech deserves protection." *Note, Rights of* *Public Employees*, 97 Harv.L.Rev. 164, 171–72 (1983). In *Connick*, the majority distinguished the facts before it from *Mt. Healthy City School Dist. Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) in part because the latter involved media publication of plaintiff's statements. This media publication was a "context" factor in the *Mt. Healthy* court's determination that the public concern was implicated. *See*, Note, 97 Harv.L.Rev. at 171 n. 64. In this case the city's internal "arson debate" had been made public by the county attorney, O'Sullivan, before Koch's demotion.

to informed decision making by the electorate". *Connick,* 461 U.S. at 145, 103 S.Ct. at 1689, 75 L.Ed.2d at 719.

It is only "when employee expression cannot be fairly considered as relating to any matter of political, social or other concern to the community", *Id.,* that the employee is without First Amendment protection. There is no First Amendment protection where the "public employee speaks ... as an employee upon matters only of personal interest". *Id.,* 461 U.S. at 147, 103 S.Ct. at 1690, 75 L.Ed.2d at 720.

"Public concern" in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), turned on the content of the speech in question. The Court distinguished "matters of public concern" from "matters of personal interest." *Id.,* 103 S.Ct. at 1690. In the instant case, Koch's report was not simply an internal memorandum intended for O'Sullivan's eyes only. O'Sullivan, not Koch, disclosed the content of Koch's report to the press the day after Koch had submitted it, and released the written report itself to the press the following week. Moreover, under Kansas law, it was foreseeable that Koch's report would have a public audience. Kansas law mandates that investigative reports "be filed in the office of the state fire marshal," Kan.Stat. Ann. § 31–137, and Kan.Stat.Ann. § 45–201 explicitly gives the public access to such records. Such "sunshine" acts are persuasive legislative determinations that the content of Koch's report was of public concern, ultimately intended for a public audience.

It is clear the speech presently at issue involves a matter of public concern and is readily distinguishable from *Connick* on its facts. *Connick* involved the dismissal from employment of Shelia Myers, an assistant district attorney in New Orleans. Upon learning she was being transferred, Myers circulated a questionnaire among her co-workers soliciting their views on office transfer policy, office morale, the need for a grievance committee, the level of confidence in supervisors and whether employees felt pressure to work on political campaigns. Only this latter query touched

upon matters of public concern, but is irrelevant for present purposes.

The Supreme Court noted that Myers' questions were calculated solely to "gather ammunition for another round of controversy with her supervisor ... reflect(ive of) one employee's dissatisfaction with a transfer". *Id.,* 461 U.S. at 148, 103 S.Ct. at 1691, 720 L.Ed.2d at 721. The survey questions in *Connick* were motivated by anger with the object of personal aggrandizement and

> did not seek to inform the public that the District Attorney's office was not discharging its governmental responsibilities in the investigation and prosecution of criminal cases. Nor did Myers seek to bring to light actual or potential wrong doing or breach of public trust on the part of Connick and others.

*Id.*

On the contrary, the speech in the present case was calculated to inform and alert the public about the city government's discharge of its duty to investigate arson. Unlike internal transfer procedures at issue in *Connick,* the content of Koch's speech *is* of public import in evaluating the performance of the City of Hutchinson's elected officials. Unlike *Connick,* the speech at issue was not motivated by personal interest. Koch's objective was to inform his superiors of what he believed to be arson and then the public of what he believed was defendants' misfeasance.

This case is more like *Pickering* where public comments about the allocation of school funds was determined to be a matter of public concern. How the school board discharges its duty to educate children is akin to how the city and its fire department investigates arson. The *Pickering* and present speeches both, unlike *Connick's,* "sufficiently inform the issue (of education or arson investigation) as to be helpful to the public in evaluating the conduct of the government". *Wilson,* 732 F.2d at 768. We hold, therefore, that the speech at issue here was of public concern so as to render the district court's granting of defendant's motion for judgment n.o.v. erroneous.[7]

---

7. Defendants assert in the event we find Koch's speech a protected matter of public concern, we

must then determine whether the trial court's

Accordingly, the judgment of the trial court with respect to the judgment n.o.v. is reversed. The jury's verdict is reinstated.[8] The trial court's rulings are affirmed in all other respects.

SETH, Circuit Judge, dissenting:

Regretfully, I must dissent from the majority position.

The issue on this portion of the appeal relates only to the official written report submitted by Mr. Koch as to the cause of the fire and the grant of judgment n.o.v. by the trial court on the First Amendment issue. This was a report required to be submitted as one of his duties as fire marshal. He and two inspectors made the investigation. The plaintiff Koch in his report concluded that the fire was caused by arson. It is on this report alone that the plaintiff relies as protected speech.

At the time the official report was submitted no official position had been taken by the plaintiff's superiors as to the cause of the fire. There was no issue, no dispute as to the fire. The report was not critical of any policies in effect at the time nor of the performance of duties by any city employees or officials. The report was in the exercise of a narrow affirmative duty placed on the plaintiff to investigate and make a report on the cause of fires. His immediate superior was the fire chief. It was thus an isolated and independent exercise of plaintiff's duties and not part of any ongoing problem or issue. It represented plaintiff's official conclusion as to the cause of this fire and nothing more. The record does not in any way indicate that plaintiff intended the report to be anything other than the ordinary exercise of his routine duties within the fire department although the matter was serious.

Common understanding tells us that plaintiff was doing what the multitude of city employees in Kansas were doing that same day—submitting reports and statements as to their activities, conclusions, and opinions in the performance of their duties. Each was of a greater or lesser significance, but each was part of the fuel for the machinery of government and each had an impact on the public and was of interest to the taxpayers and the public generally. It would be expected by common knowledge that each submission would become public knowledge by reason of its nature, or by its impact on individuals or groups or by reason of the sunshine laws. The fact that the reports would become generally known seems to be present in every instance such as this and does not serve to help us reach a conclusion.

Public knowledge or public airing of a statement such as this does not of itself make it of "public concern" as the term is used in *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708. Whether the statement was made public, how it was made public, who made it public, or the extent of the publicity would not seem to be significant. *Key v. Rutherford*, 645 F.2d 880 (10th Cir.1981). As the Court said in *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619:

> "The First Amendment forbids abridgment of the 'freedom of speech.' Neither the Amendment itself nor our decisions indicate that this freedom is lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public. We decline to adopt such a view of the First Amendment."

action can be sustained under the second portion of the *Wilson v. City of Littleton* analysis, i.e., the application of the *Pickering* test. This test is a "balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees". *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734, 20 L.Ed.2d at 817.

We disagree. The jury below has already determined the City of Hutchinson is liable un-

der § 1983 for violation of Koch's First Amendment rights. The sole issue addressed by the trial judge in granting judgment n.o.v. was whether the speech was a matter of public concern. Whether the jury properly performed the *Pickering* balancing test in reaching its verdict is not now before us.

8. Because we hold that the judgment n.o.v. was improper and reinstate the jury verdict, whether it was error to deny plaintiff's motion to reconsider, alter or amend is denied as moot.

*Connick* tells us that the "nature of the employee's expression" is the significant factor. This is a question of subject matter and context as the Court there states. This is the issue before us.

If any and every official report by a public employee regardless of its "nature" became a matter of "public concern" because it received publicity there would be no room for expression of opinion or "give and take" in the conduct of the public business, as we said in *Schmidt v. Fremont County School District No. 25,* 558 F.2d 982 (10th Cir.1977). Also as the Court said in *Connick,* "government offices could not function if every employment decision became a constitutional matter."

What was the "nature of the employee's expression" in the case before us? The record shows, as already described, that the report by plaintiff was a statement of his conclusions as a public employee limited to a matter within his official duties. The Court in *Connick* makes a reference to *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811, as follows:

> "The repeated emphasis in *Pickering* on the right of a public employee 'as a citizen, in commenting upon matters of public concern,' was not accidental. This language, reiterated in all of *Pickering's* progeny, reflects both the historical evolvement of the rights of public employees, and the common-sense realization that government offices could not function if every employment decision became a constitutional matter."

The Court in the same opinion thereafter said:

> "We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior. Cf. *Bishop v. Wood,* [426 U.S. 341,] at 349–350 [96 S.Ct. 2074, 2079–2080, 48 L.Ed.2d 684]. Our responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government; this does not require a grant of immunity for employee grievances not afforded by the First Amendment to those who do not work for the State."

The basic consideration by the Court in *Connick* was the fact that the "speech" arose from and concerned the refusal by plaintiff to accept a transfer and the office dispute as to her position. This was the "personal interest" referred to by the Court. When the statement is placed in the "personal interest" category it is neither of "public concern" nor is it advanced by the employee "as a citizen." It thus fails on both requirements set forth in *Pickering* and emphasized in *Connick.* We have considered several personal interest cases. *Saye v. St. Vrain Valley School District RE–1J,* 785 F.2d 862 (10th Cir.1986); *Bailey v. Kirk,* 777 F.2d 567 (10th Cir.1985); *Sipes v. United States,* 744 F.2d 1418 (10th Cir.1984), and *Wilson v. City of Littleton, Colo.,* 732 F.2d 765 (10th Cir.1984), wherein the requirements of *Pickering* were not met.

There is, of course, no personal interest element in the case before us, but there exists an equally evident failure to meet the *Pickering-Connick* requirements. This is the fact that the report here concerned was not made by the plaintiff "as a citizen commenting . . . ." It was instead made by the employee solely in his official capacity. Thus, in my view, the report did not invoke First Amendment protection.

In *Schmidt v. Fremont County School District No. 25,* 558 F.2d 982 (10th Cir. 1977), we also considered a statement of general interest by a school principal which we described as a "part of his official functions" and thus did not invoke First Amendment protection. We there said in part:

> "Furthermore, to hold otherwise would preclude discussion between a school board and its employees on the formulation and administration of matters of policy in the school system. A give and take is expected in discussions as to internal issues."

*See also Wilson v. City of Littleton, Colo.,* 732 F.2d 765 (10th Cir.1984).

Thus the report here considered is well within our holding in *Schmidt.* It is purely an official statement, presented as such, and plaintiff was "speaking" only as a public employee and not as a citizen. This does not meet the requirements set forth in *Pickering* and *Connick.*

I would thus affirm the trial court.