**Thomas J. CHAPPELL, Plaintiff,**

v.

**Richard MILLS, et al., Defendants.**

**No. 86–3186.**

United States District Court,
D. Kansas.

Dec. 11, 1989.

Thomas J. Chappell, pro se.

Brenda L. Braden, David M. Cooper, Deputy Attys. Gen., Carol R. Bonebrake, Asst. Atty. Gen., Topeka, Kan., for defendants.

## ORDER

WESLEY E. BROWN, Senior District Judge.

This civil rights action is before the court on defendants' motion for summary judgment pursuant to F.R.Civ.P. 56. The case was pretried by a telephonic conference held December 14, 1988. The defendants produced the documents specified in the pretrial order. Discovery closed February 15, 1989.

The only motions pending besides the summary judgment motion are plaintiff's motions for in camera inspection, appointment of counsel, and to set a trial date. In view of our disposition of this case, these motions will be moot.

### I. THE PARTIES

Plaintiff is an inmate in the custody of the Kansas Secretary of Corrections and is incarcerated at the Stillwater State Prison, Stillwater, Minnesota. He filed this action August 11, 1986.

The defendants are: Richard Mills, the former Secretary of Corrections for the State of Kansas; Herb Maschner, the former Director of Kansas State Penitentiary (KSP), Lansing, Kansas; Dale Bohannon, the former Deputy Director of KSP; Randall Buford, a former deputy director of KSP; Kenneth Lynch, an employee of KSP when plaintiff filed this action; and Dan Pettis, a Captain in the Intelligence and Investigation Unit at KSP.

## II.  PLAINTIFF'S CLAIMS

Plaintiff alleges he was deprived of his liberty by defendants' placing him in administrative segregation without cause and without adherence to their own rules and regulations; that the defendants denied him procedural due process in failing to give him notice of hearing and statement of reasons prior to placing him in administrative segregation; that he was subjected to cruel and unusual punishment by being placed in administrative segregation.

Plaintiff next alleges that defendants transferred him on three occasions (to Iowa, Colorado, and Minnesota) in retaliation for his resort to the courts to vindicate his First Amendment rights and in violation of the due process clause of the Fourteenth Amendment; that, because he was transferred, his attempts to obtain legal counsel for redress in the courts were frustrated as were his rights under the First and Fourteenth Amendments; and that the totality of circumstances to which he was subjected constitute cruel and unusual punishment in violation of his rights under the Eighth and Fourteenth Amendments.

Plaintiff alleges that Defendant Mills knew, or should have known, of the illegal conduct of Defendants Maschner, Bohannon, Buford, Lynch, and Pettis, and willfully acquiesced therein. In addition he alleges that defendants acted pursuant to a conscious policy and practice of retaliation against prisoners for resorting to the courts and that the defendants conspired to deny plaintiff access to the courts. Lastly, plaintiff seeks declaratory and injunctive relief as well as compensatory damages in the amount of $100,000, punitive damages for each defendant in the amount of $200,000, and attorneys' fees.

## III.  THE FACTS

In August, 1983, plaintiff, an adherent of the Sikh Dharma religion, filed an action in Leavenworth District Court (Case No. 83–C–273) to enforce First Amendment rights; specifically, he sought to wear a turban, take a cold shower every morning, and keep dietary restrictions. On February 24, 1984, a hearing was held in the case, and the district court determined that plaintiff should be permitted to conduct weekly religious services and observe other religious beliefs. The parties signed a consent decree in the case in March, 1984.

In June, 1984, plaintiff and seven other inmates were placed in administrative segregation (A & T) pursuant to K.A.R. 44–14–302(b) pending investigation of possible involvement in an inmate work stoppage. Major Lynch had advised the unit team that, because of plaintiff's possible involvement in a work stoppage, transfer to another state would be appropriate. On July 13, 1984, the unit team's recommendation to transfer plaintiff to another state was approved. The Director of KSP approved continuing plaintiff in A & T under K.A.R. 44–14–302(g) on July 16, 1984.

On August 9, 1984, plaintiff filed a habeas corpus petition in Leavenworth District Court, Case No. 84–HC–081, challenging his continued confinement in A & T. The habeas corpus petition alleged that the defendants did not follow the required procedural process to place plaintiff in A & T. The district court on August 13, 1984, ordered that plaintiff be restored to the general population for failure of defendants to adhere to procedural requirements. The court's order was carried out administratively by order of Director Maschner.

Shortly after plaintiff was returned to the general population, he was transferred to Iowa State Penitentiary under the provisions of the Interstate Corrections Compact, K.S.A. 76–3001 *et seq.* Plaintiff was returned to KSP on or about September 26, 1984, and was transferred to the Territorial Correctional Facility in Canyon City, Colo-

rado, the next day. On or about November 16, 1984, plaintiff was transferred to the Stillwater State Prison, Stillwater, Minnesota. On November 21, 1984, Leavenworth District Court, in Case No. 83–C–273, issued an order restraining defendants from further transferring plaintiff pending a hearing on November 29, 1984. On December 27, 1984, the district court determined that plaintiff could be the subject of no further transfers except back to KSP. Defendants appealed and on March 6, 1986, the Kansas Court of Appeals (Case No. 85–57722–A) reversed the district court's decision in Case No. 83–C–273. The Kansas Court of Appeals in reversing the district court determined that under Kansas law prison officials were given the authority at any time to transfer an inmate of a Kansas prison for any reason or for no reason at all. The court held that as a result of the Kansas law an inmate has a heavy burden of proof when he alleges that the real motivating factor for his transfer was to deny the inmate a constitutionally protected right. In addition to its legal pronouncements, the Kansas Court of Appeals reviewed the record of trial proceedings and determined the following:

> "Based on the record before us, plaintiff (Chappell) did not establish by substantial evidence that the administration's motivating factor for repeatedly transferring him to other institutions was to deny him the right to practice the Sikh Dharma religion pursuant to the terms of the March 8, 1984 consent decree. Furthermore, we conclude there is no showing of abuse on the part of prison officials; nor do we see evidence that exercised their discretionary powers in an unlawful, arbitrary or capricious manner."

## IV. CONCLUSIONS OF LAW

It is clear from the pretrial order and from plaintiff's petition that he bases his 1983 claim against the defendants on three actions by some or all of them as prison authorities at KSP. In chronological order these actions by KSP consist of the claim that he had been denied the right to practice his religion; that he had been placed in A & T by prison authorities without their complying with their rules and regulations; and that he had been transferred to other facilities to prevent him from having access to the courts and to punish him for seeking redress in the courts. Plaintiff, using these claimed actions of the prison authorities, then contends that the totality of the circumstances to which he was subjected constituted cruel and unusual punishment. He also contends that the prison authorities or the defendants acted pursuant to a conscious policy and practice of retaliation against prisoners for resorting to the courts, and finally plaintiff alleges that Defendant Mills acquiesced in the conduct of the other defendants and seeks compensatory and punitive damages.

We have considered all of the stipulated facts as shown by the record in this case and in addition for what it is worth we take judicial notice that as of June 1, 1989, there have been filed in the last five years in this court from prisoners in KSP 322 habeas corpus petitions, 57 of which are pending; 861 civil rights petitions, 173 of which are pending; and 24 other types of petitions.

We have determined that because all of plaintiff's basic contentions have been resolved by the state courts involving in substance the same parties he is precluded from pursuing his 1983 claim involving the same issues and parties in this court.

In *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56, the Supreme Court in footnote one discussed the "claim of a subsequent suit under 42 U.S.C. §§ 1983 and 1985." The footnote reads:

> "The preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years. These effects are referred to collectively by most commentators as the doctrine of 'res judicata.' (citation omitted) Res judicata is often analyzed further to consist of two preclusion concepts: 'issue preclusion' and 'claim preclusion.' Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter

that has been litigated and decided. (citation omitted) This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit...."

In *United States v. Mendoza*, 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379, the Supreme Court stated:

"Under the judicially-developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation. (citation omitted) Collateral estoppel, like the related doctrine of res judicata, serves to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.' (citation omitted) In furtherance of those policies, this court in recent years has broadened the scope of the doctrine of collateral estoppel beyond its common-law limits. Ibid. It has done so by abandoning the requirement of mutuality of parties (citation omitted) and by conditionally approving the 'offensive' use of collateral estoppel by a nonparty to a prior lawsuit. (citation omitted)"

We must in our consideration of this case carry out the Constitution's Full Faith and Credit Clause which is implemented by federal law, 28 U.S.C. § 1738. In *Migra*, supra, the Court stated "It is now settled that a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." (citation omitted)

The Supreme Court of Kansas has held that " 'the doctrine of collateral estoppel prevents a second litigation *of the same issues between the same parties* or their privies even in connection with a different claim or cause of action.' " (Emphasis of the court) *Williams v. Evans*, 220 Kan.

394, 552 P.2d 876, 878 (1976), quoting *Goetz v. Board of Trustees*, 203 Kan. 340, 454 P.2d 481 (1969). The 10th Circuit Court of Appeals adopted the rule in *Koch v. City of Hutchinson*, 814 F.2d 1489 (10th Cir.1987), *vacated on other grounds* and *on rehearing en banc, Koch v. City of Hutchinson*, 847 F.2d, 1435, 1436 (10th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988). The court went on to hold there that "contrary to plaintiff's argument, it does not matter that the state suit was in the nature of mandamus, seeking injunctive relief, while the federal suit seeks damages." *Ibid*, 814 F.2d at 1494.

The *Koch* case continued and pointed out that "a number of federal and Kansas decisions specifically hold issues litigated and determined in a mandamus proceeding may not be relitigated in a subsequent suit for damages." (citations omitted) Indeed the 10th Circuit in *Brown v. Delayo*, 498 F.2d 1173, 1175 (10th Cir.1974), specifically recognized that the Civil Rights Act "is not a vehicle for collateral attack on a final state court judgment."

Our careful review of the facts and law of this case convinces us that plaintiff's § 1983 action in this court is barred by both claim and issue preclusion and his claims are *res judicata*. Plaintiff is estopped by virtue of the state court judgments from asserting those adjudicated issues to establish a § 1983 claim.

The motion of the state for summary judgment is sustained. In view of our holding we need not reach the other contentions of the state as a basis for sustaining its motion for summary judgment.

SO ORDERED.