Thomas J. KEY, Plaintiff-Appellant,

v.

Bud RUTHERFORD, individually and in his official capacity as City Manager of the City of Stroud, Oklahoma; John Killingsworth, individually and in his official capacity as Mayor of the City of Stroud, Oklahoma; Clarence N. Van Meter, individually and in his official capacity as Councilman for the City of Stroud, Oklahoma; Levi Neese, individually and in his official capacity as Councilman for the City of Stroud, Oklahoma; Olen Bly, individually and in his official capacity as Councilman for the City of Stroud, Oklahoma; Eugene Rogers, individually and in his official capacity as Councilman for the City of Stroud, Oklahoma; The City of Stroud, Oklahoma, Defendants-Appellees.

No. 79–1305.

United States Court of Appeals,
Tenth Circuit.

Argued July 7, 1980.

Decided April 10, 1981.

Rehearing Denied May 22, 1981.

Frank M. Hagedorn of Hall, Estill, Hardwick, Gable, Collingsworth & Nelson, Tulsa, Okl. (J. Kevin Hayes, P. Thomas Thornburgh, Tulsa, Okl., on brief), for plaintiff-appellant.

George W. Dahnke of Hastie & Kirschner, Oklahoma City, Okl. (Richard James of James & Gilmore, P. C., Stroud, Okl., on brief), for defendants-appellees.

Before SETH, Chief Judge, McKAY, and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

This civil rights claim was brought under 42 U.S.C. § 1983 by Thomas Key against the City of Stroud, Oklahoma, its City Manager Bud Rutherford, its Mayor John Killingsworth, and four members of the Stroud City Council. The City officials were named as defendants both individually and in their official capacities. In his amended complaint,[1] Key alleges that he was unlawfully discharged from his position as police chief of Stroud because he exercised his First Amendment rights, specifically the rights to petition the government, to freedom of speech, and to freedom of association.[2]

---

1. In the original complaint the City of Stroud was not named as a defendant. Key amended his complaint to add Stroud following the Supreme Court's decision in *Monell v. New York City Depart. of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which held that local governments are "persons" within the meaning of 42 U.S.C. § 1983.

2. Key also apparently claims that his termination violated due process in that he was denied a liberty and/or property interest without prop-

Key was hired as police chief of Stroud in November 1976. He was discharged on or about July 26, 1977. The events leading to his termination are allegedly as follows. Key became aware shortly after he assumed his position that the police force was dissatisfied with the police salary structure. There had been some talk about forming a Fraternal Order of Police (FOP) Lodge to discuss this issue with the City. At first, Key attempted to discourage the formation of an FOP chapter and told his men that he would present their budget grievances to city officials. Key then spoke to City Manager Rutherford without success. He also discussed the budget with Mayor Killingsworth at Killingsworth's place of business. When his efforts failed, Key approved formation of an FOP chapter, became a member, and publicly announced his support of the FOP, although he declined to be elected president. Three days after Key informed Rutherford that an FOP chapter had been organized, Rutherford notified Key that he was discharged.

The subsequent formal termination notice stated that Key had been discharged for insubordination and listed four allegedly insubordinate acts. In one of the allegations Key was charged with violating section 4.11 of the City of Stroud Employees' Handbook by approaching the mayor about the police budget at his place of business. Section 4.11 provides that "[e]mployees are not to discuss complaints or problems with City Council members. To do so is considered grounds for dismissal."

Key was given a hearing before the City Council on his discharge. The Council affirmed the finding of insubordination and approved Key's termination. Key then filed· this suit.

At the trial below, the judge instructed the jury that section 4.11 was unconstitutional and void on its face as "an abridgement of free speech, and also an unlawful restraint on the right of a citizen to petition the Government for a redress of griev-

ances." Rec., vol. I, at 241. He further instructed the jury on Key's claim that his First Amendment rights "were violated because he was discharged in reprisal for allowing members of the police department to hold organizational meetings for the establishment of a Fraternal Order of Police and publicly announcing his support therefore." *Id.* at 240. The jury was told that in order to prevail on his civil rights claim, Key bore the burden of establishing by a preponderance of the evidence that the exercise of his First Amendment rights was a motivating factor in his discharge. Finally, an instruction was given that the individual defendants and the City of Stroud would be immune from liability if the city officials had acted in good faith. The jury returned a verdict in favor of all defendants.

On appeal Key urges setting aside the jury verdict as against the clear and overwhelming weight of the evidence. He also argues that reversal as to the city is required by *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), in which the Supreme Court held that qualified immunity is not available to a city when its officials undertake unconstitutional activity in good faith.

We affirm in part, reverse in part, and remand for a new trial in accordance with this opinion.

## I.

### Municipal Immunity

The Supreme Court decision in *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), established that local governmental units are subject to suit under 42 U.S.C. § 1983. In that case, however, the Court expressly declined to consider whether a city would be entitled to "some form of official immunity." *Id.* at 701, 98 S.Ct. at 2041. Thus on January 31, 1979, when the trial court entered judgment on the jury verdict in favor of the City of Stroud, the

---

er notice and hearing. This claim is based on Key's allegation that his termination hearing before the City Council was a fraud and a

sham. The trial court did not instruct the jury on this claim and Key did not object. Thus the issue is not before this court on appeal.

availability of qualified municipal immunity was an unsettled question.

Pending appeal of this case, we held in *Bertot v. School District No. 1, Albany County*, 613 F.2d 245 (10th Cir. 1979) (en banc), that a school board is not entitled to qualified immunity based on the good faith of its members and noted that under *Monell* school boards and municipalities are not to be distinguished for purposes of a section 1983 cause of action. *Id.* at 247. The Supreme Court then squarely addressed the issue of qualified municipal immunity in *Owen*, 445 U.S. 673, 100 S.Ct. 1427, which was also handed down while the instant case was pending appeal. After a thorough analysis of the relevant policy considerations, the Court in *Owen* concluded that "municipalities have no immunity from damages liability flowing from their constitutional violations . . . ." *Id.* at 657, 100 S.Ct. at 1418.

As a consequence of these subsequent changes, the trial court's jury instruction that Stroud would be immune if its city officials acted in good faith is erroneous under the current state of the law. The general rule under these circumstances requires that, absent manifest injustice, the appeals court take notice of an intervening decision [3] and apply the law in effect at the time the appeal is to be decided. *See Bradley v. Richmond School Board*, 416 U.S. 696, 711–21, 94 S.Ct. 2006, 2016–21, 40 L.Ed.2d 476 (1974); *Concerned Citizens v. Sills*, 567 F.2d 646, 649 n.5 (5th Cir. 1978).

Appellees argue that Key should be precluded from raising the *Owen* decision as grounds for reversal on appeal because he failed to object to the trial court's instruction. We disagree. Although the giving of an instruction cannot ordinarily be assigned as error under Fed.R.Civ.P. 51 if an objection was not made at trial,[4] this court has recognized an exception to the application of Rule 51 when the interests of justice require. *See Glasscock v. Wilson*, 627 F.2d 1065, 1067–68 (10th Cir. 1980).

The Supreme Court in *Owen* articulated compelling policy reasons for requiring municipalities to bear the financial loss resulting from their unconstitutional conduct. The Court also pointed out that the Civil Rights Act confers broad powers upon the federal judiciary to remedy constitutional violations. *Owen*, 445 U.S. at 636 n.17, 100 S.Ct. at 1408 n.17. The trial judge here did not have the benefit of the *Owen* decision when he formulated his instructions. On this record, the jury could have found in favor of the City of Stroud solely because of the good faith defense instruction. We believe the interests of justice are best served by remanding this case for a new trial as to the City of Stroud and the individual defendants in their official capacities[5] in light of the holding in *Owen*. *See Bradley*, 416 U.S. at 716–21, 94 S.Ct. at 2019–21; *Pennington v. Lexington School District 2*, 578 F.2d 546 (4th Cir. 1978).

---

**3.** This case does not present a situation in which an intervening decision overturns clear past precedent or decides an issue of first impression. *See, e. g., Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). The intervening decisions here do not make a clean break with prior cases but instead represent the evolution of the law on this issue.

**4.** Fed.R.Civ.P. 51 provides:
"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed.

No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

**5.** *See Bertot v. School District No. 1, Albany County*, 613 F.2d 245, 247 n. 1, in which we pointed out that judgments against local government officials in their official capacities are equivalent to a judgment against the governmental entity itself. As in *Bertot*, we will hereinafter treat the City of Stroud and the other defendants in their official capacities as one entity.

## II.

### *First Amendment Rights*

Section 4.11 of the Stroud Employees' Handbook prohibits employees from discussing grievances with City Council members. The trial court ruled that the provision was unconstitutional on its face as an abridgment of employees' First Amendment rights. We agree with defendants that this was error which inured to the benefit of the plaintiff. However, since the case is to be retried as to the City of Stroud, the error must be addressed in this appeal.

■ Our analysis of the constitutionality of legislation regulating the speech of public employees begins with *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Pickering, a teacher, contended that a state statute which authorized dismissal of teachers if required by the interest of the school violated the teachers' First Amendment rights. Pickering claimed that the statute was unconstitutional both on its face and as applied to the facts of his case. The Supreme Court did not reach the issue of the statute's facial validity. *See* 391 U.S. at 565 n.1, 88 S.Ct. at 1733 n.1. Instead, recognizing that "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general," *id.* at 568, 88 S.Ct. at 1734, the Court established a balancing test to be used when state regulation of public employees is challenged as violative of the First Amendment. Under this test, the interest of an employee in "commenting upon matters of public concern" is weighed against the interest of the employer "in promoting the efficiency of the public services it performs through its employees." *Id.* The trial court erred in this case by holding section 4.11 facially unconstitutional rather than evaluating it under the *Pickering* balancing test.

In applying the *Pickering* test, courts have identified two situations in which the state can properly regulate an employee's right to speak. "First, speech that is so disruptive as to impede the [employee's] performance or to interfere with the operation of [official functions] may be proper grounds for discipline. Second, if the speech does not involve matters of public interest it may not be entitled to constitutional protection." *McGill v. Board of Education of Pekin Elementary School*, 602 F.2d 774, 777 (7th Cir. 1979); *accord, Schmidt v. Fremont County School District No. 25*, 558 F.2d 982 (10th Cir. 1977).

■ Key's communication with the mayor about increasing the budget of the Stroud police department as a means of improving the level of police protection for the city clearly constituted a matter of public concern. *Cf. Pickering*, 391 U.S. at 571–72, 88 S.Ct. at 1736 (school budget is a matter of legitimate public concern). During the trial, the mayor conceded the public's interest in the police department budget. But Key's comments, unlike those at issue in *Pickering*, were directed to the mayor personally rather than to the public. This is significant because the *Pickering* test takes into account not only the content of the speech (whether it involves matters of public interest as opposed to purely personal concerns), but also the manner of expression (whether it is conveyed privately or to the public at large). The Supreme Court has made clear that private expression of public interest matters is not outside the aegis of the First Amendment, but that the time, place and manner of the speech are factors to be given weight in the *Pickering* balance when privately conveyed expression is at issue:

"Although the First Amendment's protection of government employees extends to private as well as public expression, striking the Pickering balance in each context may involve different considerations. When a teacher speaks publicly, it is generally the *content* of his statements that must be assessed to determine whether they 'in any way either impeded the teacher's proper performance of his daily duties in the classroom or . . . interfered with the regular operation of the

schools generally.' . . . Private expression, however, may in some situations bring additional factors to the *Pickering* calculus. When a government employee personally confronts his immediate superior, the employing agency's institutional efficiency may be threatened not only by the content of the employee's message but also by the manner, time, and place in which it is delivered."

*Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 415 n.4, 99 S.Ct. 693, 696 n.4, 58 L.Ed.2d 619 (1979). Of course, since First Amendment interests are at stake, time, manner, place, performance and operational efficiency objections to speech must be real and important before they can serve as a basis for discipline or discharge of a public employee.

In resolving on retrial whether the city's reliance on section 4.11 in terminating Key abridged his First Amendment rights, it must be determined whether the content of Key's communication to the mayor or its method of expression significantly interfered with Key's effectiveness as chief of police or with the efficiency of the police department.

Key also contends the evidence at trial established that he was improperly terminated by the city for his participation in the formation of an FOP chapter and his public support for the group. Defendants deny Key's termination had anything to do with the FOP and, further, assert that a municipality may properly prohibit its supervisory personnel from joining a union of rank and file employees. Because this issue may arise on retrial, we briefly consider it here.

■ Although public employees have a constitutional right to join a union, this right is not absolute. *See Norbeck v. Davenport Community School District*, 545 F.2d 63, 67 (8th Cir. 1976) (freedom of association not abridged by termination of high school principal for acting as chief negotiator for teacher's union), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977). A city may prevent union membership of managers and supervisory personnel if it can show there is a substantial state interest in

the limitation on associational rights and that the limits employed are narrowly drawn to avoid unnecessary abridgement of such rights. *See York County Fire Fighters v. York County*, 589 F.2d 775, 778 (4th Cir. 1978); *Norbeck*, 545 F.2d 63, 67; *Elk Grove Firefighters Local No. 2340 v. Willis*, 400 F.Supp. 1097 (N.D.Ill.1975), *aff'd mem.*, 539 F.2d 714 (7th Cir. 1976). In these cases, the state was found to have a substantial and legitimate interest in promoting the efficient operation of public services. Barring union membership by supervisory personnel was held to promote this interest because it maintained discipline by supervisors and preserved their undivided loyalty to their employers.

Key testified below that the FOP is not a union but a fraternal organization for the professional advancement of law enforcement. If this issue arises on retrial, the district court must determine whether the FOP is the type of association in which membership by the police chief would sufficiently conflict with the city's interest in an efficient police department, notwithstanding Key's decision not to act as president and negotiator for the group.

■ If it is determined on remand that Key's communication to the mayor or his public support for or participation in the FOP was constitutionally protected, Key must then show that the exercise by him of one or more of these constitutional rights was a "motivating factor" in the City's decision to terminate his employment. *See Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). The City then bears the burden of showing by a preponderance of the evidence that it would have reached the same decision to terminate Key in the absence of the protected activity. *Id.* These are all issues to be resolved at retrial by the trier of fact under instructions framed according to the law set forth above.

### III.

### *The Sufficiency of the Evidence*

Key's primary argument on appeal is that the jury verdict in favor of all defendants

was against the clear and overwhelming weight of the evidence. Because we are requiring a new trial on the liability of the City of Stroud, we will consider Key's argument on this point only with respect to the remaining defendants in their personal capacities.

■ We must uphold the jury verdict in favor of the individual defendants if substantial evidence supports it. *See Moore v. Telfon Communications Corp.*, 589 F.2d 959, 964 (9th Cir. 1978); *Community Television Services v. Dresser Industries*, 586 F.2d 637, 641 n.7 (8th Cir. 1978). The trial court properly instructed the jury under *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975), that the individual defendants in their personal capacities were immune from liability if they acted in good faith. *See Owen*, 445 U.S. at 657, 100 S.Ct. at 1418. As we have previously noted, the erroneous instruction declaring section 4.11 void on its face benefited appellant Key. After a careful review of the record, we conclude there is sufficient evidence to support a conclusion that the individual defendants acted in good faith. Accordingly the judgment in favor of the defendants in their personal capacities is affirmed.