820 F.2d 792
 40 Ed. Law Rep. 84
 Ayers RATLIFF, Plaintiff-Appellee,
v.
WELLINGTON EXEMPTED VILLAGE SCHOOLS BOARD OF EDUCATION;
James W. McGlamery; Richard McKenzie; Ralph A. Hayes;
Audrey Lance; Phyllis Mosher; Bernard Nirode; and Leslie
Warrens, Defendants-Appellants.
 No. 86-3204.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 23, 1987.
Decided June 10, 1987.
 
 Dennis M. O'Toole, argued, Michael J. Loughman, Warhola & O'Toole, Lorain, Ohio, for defendants-appellants.
 James H. Banks, Columbus, Ohio, Nina M. Najjar, argued, J.C. Ratliffe (Local Counsel), Marion, Ohio, for plaintiff-appellee.
 Before MARTIN and MILBURN, Circuit Judges; and BROWN, Senior Circuit Judge.
 BAILEY BROWN, Senior Circuit Judge.
 
 
 1
 Defendants-Appellants Wellington Exempted Village Schools Board of Education (the Board) and Dr. James McGlamery (the Superintendent), the superintendent of the Wellington Exempted Village Schools, appeal the order of the district court denying their motion for a judgment notwithstanding the jury verdict against them in this unconstitutional discharge action. Appellants maintain that the evidence fails to support the jury's finding that they declined to renew the employment contract of plaintiff-appellee Ayers Ratliff (Ratliff) in retaliation for Ratliff's exercise of his first amendment rights. Appellants also contend that the district court plainly erred in the jury instruction on compensatory damages. For the following reasons, we affirm the district court's order denying appellants' motion for a judgment notwithstanding the verdict, but we vacate the awards of compensatory damages against the Board and the Superintendent and remand the case to the district court for a new trial on compensatory damages.
 
 
 2
 Ratliff was a middle school principal in the Wellington Village Schools system from 1980 through 1984. At a public meeting in September 1982, Ratliff spoke before the Board on the dire condition of the schools due to the lack of adequate financial support and apparently expressed concern about the lack of trust between the teachers and the Board. Eighteen months later, on March 13, 1984, the Board, acting on the Superintendent's recommendation, voted not to renew Ratliff's employment contract.
 
 
 3
 On November 14, 1984, Ratliff filed this suit under 42 U.S.C. Sec. 1983 against the Board, and against the Board's members, the Board's Treasurer and the Superintendent in their official and individual capacities, alleging, inter alia, that the Board failed to renew his employment contract in unlawful retaliation for his September 1982 speech.[1] A jury trial occurred in early December 1985. Prior to submission of the case to the jury, the district court granted a directed verdict as to the Treasurer in both his official and individual capacities and as to the Superintendent and the Board members in their individual capacities. With regard to damages, the district court instructed the jury to consider, among other things, two kinds of compensatory damages--for mental anguish and for harm to Ratliff's first amendment rights. With respect to the latter, the district court stated, in pertinent part:
 
 
 4
 [Y]ou must award Ratliff damages for the violation of his constitutionally protected rights.... [J]ust because these rights are not capable of precise evaluation does not mean that an appropriate monetary amount should not be awarded.
 
 
 5
 The precise value you place upon the constitutional rights which were denied to plaintiff is within your discretion. You may want to consider the importance of the right to free speech in our system of government, the role which these rights have played in the history of our republic, and the significance of the rights in the context of the activities which the plaintiff was engaged in at the time of the violation of the rights.
 
 
 6
 Appellants did not object to the above instruction. The jury returned a verdict against the Board for $100,000 in compensatory damages and against the Superintendent for $50,000 in compensatory damages and $50,000 in punitive damages.
 
 
 7
 The Board and the Superintendent then filed motions for a judgment notwithstanding the verdict, a new trial and a remittitur of damages. The district court denied the first two motions; but the court granted the third with respect to the punitive damages assessed against the Superintendent, which the court remitted.[2] The district court also ordered payment of $75,537.72 in back pay.
 
 
 8
 On appeal appellants first argue that the district court should have granted their motion for a judgment notwithstanding the verdict because the evidence presented at trial did not permit a reasonable conclusion that Ratliff's September 1982 speech played a determinative role in the decision not to renew Ratliff's employment contract. The argument is without merit.
 
 
 9
 The issue raised by a motion for a judgment notwithstanding the verdict is whether there is sufficient evidence to raise a question of fact for the jury. In determining whether the evidence is sufficient, the trial court may neither weigh the evidence, pass on the credibility of witnesses nor substitute its judgment for that of the jury. Rather, the evidence must be viewed in the light most favorable to the party against whom the motion is made, drawing from that evidence all reasonable inferences in his favor. If, after thus viewing the evidence, the trial court is of the opinion that it points so strongly in favor of the movant that reasonable minds could not come to a different conclusion, then the motion should be granted. An appellate court when reviewing the trial court's decision is bound by the same standard. Morelock v. NCR Corp, 586 F.2d 1096, 1104-05 (6th Cir.1978), cert. denied, 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979).
 
 
 10
 Applying that standard to the evidence presented here, the district court's denial of appellants' motion for a judgment notwithstanding the verdict clearly must be affirmed. The parties agree that under Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), if a public employee alleges that his employer took adverse action against him in retaliation for his exercise of first amendment rights, the following analytical approach must be applied:
 
 
 11
 (1) The threshhold question is whether the plaintiff's conduct deserves constitutional protection.
 
 
 12
 (2) If the court finds that an employee's conduct was protected by the first amendment, the finder of fact must determine whether the action taken was because he engaged in the protected conduct. The employee's protected conduct must be a "substantial factor" or a "motivating factor" in the employer's decision.
 
 
 13
 (3) Once the employee meets this burden, the burden shifts to the employer to prove that the action the employee is complaining about would have taken place absent the protected conduct.
 
 
 14
 See, e.g., Reichert v. Draud, 701 F.2d 1168, 1170 (6th Cir.1983); Hilderbrand v. Board of Trustees, 662 F.2d 439, 442-43 (6th Cir.1981), cert. denied, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982). The parties also agree that the district court correctly held that Ratliff's conduct--the September 1982 speech before the Board--deserves constitutional protection. The bone of contention, therefore, concerns whether the evidence presented at trial, viewed in a light most favorable to Ratliff, permitted the jury reasonably to conclude that retaliation for Ratliff's speech was a motivating factor in the Board's decision not to renew Ratliff's employment contract and that the decision would not have been made absent Ratliff's speech.
 
 
 15
 In support of their position, appellants point out that several Board members testified unequivocally that Ratliff's speech played no part in their decision not to renew Ratliff's employment contract. Appellants also note that the Superintendent, who strongly recommended Ratliff's nonrenewal, testified that he was only a tangential consultant with the school system at the time of Ratliff's speech, he was never made aware of Ratliff's speech, and he decided to recommend nonrenewal without regard to Ratliff's speech. Appellants further observe that a host of written evaluations and memos indicate the substandard quality of Ratliff's job performance.
 
 
 16
 On the other hand, Ratliff points out that, according to his own testimony, that of his vice-principal, and that of Dr. McGlamery's predecessor as superintendent, for several years prior to Ratliff's fateful speech all concerned considered him a fine principal; but after the speech, criticism from the Superintendent began to rain down relentlessly in torrents. In fact, Ratliff testified that just prior to his September 1982 speech the Board spent four hours privately pleading with him to withdraw the resignation that he had tendered in August. Ratliff also testified that shortly after his speech, on several separate occasions, individual Board members and the Superintendent made thinly veiled threats against his job security.
 
 
 17
 The evidence contrasting the Board's pre-speech and post-speech attitudes towards Ratliff, combined with the evidence of post-speech vindictiveness verbally communicated by key players, clearly suffices to permit a reasonable inference that the speech motivated the Board not to renew Ratliff's employment contract. It is true that most of the evidence supporting Ratliff's claim comes from Ratliff himself. Nevertheless, it is the jury's province, not ours, to assess Ratliff's credibility. Indeed, we must view Ratliff's testimony, as well as that of the other witnesses, in a light most favorable to Ratliff. So viewed, the evidence provides an ample basis for a rational conclusion that Ratliff lost his position because of the September 1982 speech, not because of poor work performance. Consequently, we AFFIRM the district court's denial of appellants' motion for a judgment notwithstanding the verdict.
 
 
 18
 Appellants next argue that under Memphis Community School District v. Stachura, --- U.S. ----, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986), which was decided several months after the jury verdict in this case, the aforementioned jury instruction on compensatory damages now, unlike before Stachura, constitutes plain and obvious error which must be corrected to avoid a miscarriage of justice. In Stachura, the Supreme Court reversed a panel of this circuit[3] and invalidated an instruction virtually identical to the instruction given by the district court in this case, squarely holding that "damages based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages." Stachura, --- U.S. at ----, 106 S.Ct. at 2545, 91 L.Ed.2d at 261. Appellants urge, therefore, that we vacate the compensatory damage award and remand for a new trial on damages.
 
 
 19
 In response, Ratliff concedes, as he must, that prior to Stachura the law was unclear concerning whether compensatory damages in a case involving the alleged violation of a constitutional right could be based in part on the abstract value or importance of the constitutional right at issue. See Stachura, at ---- n. 5, 106 S.Ct. at 2541 n. 5, 91 L.Ed.2d at 257 n. 5. Ratliff also concedes that after Stachura an instruction such as the one given by the district court here, which plainly advised the jury that it could base compensatory damages on the "importance of the right to free speech in our system of government, the role which these rights have played in the history of our republic, and the significance of the rights in the context of the activities which the plaintiff was engaged in," is no longer appropriate. Ratliff maintains, nevertheless, that under Fed.R.Civ.P. 51[4] appellants cannot now contest the instruction's validity on appeal because they, unlike the defendants in Stachura, failed to object to the instruction below. Thus, the question presented is whether an appellant may challenge for the first time on appeal a jury instruction that was arguably correct when given but that is now clearly incorrect under a Supreme Court ruling issued during the pendency of the appeal.
 
 
 20
 Under Rule 51, "[o]rdinarily the appellant's failure to object to the trial court's instructions precludes appellate review of the alleged error. However, appellate courts retain the discretion to review errors not preserved for appeal in those exceptional cases where the errors are so obvious and prejudicial as to affect the fairness of judicial proceedings." Gomez v. Great Lakes Steel Division, National Steel Corp., 803 F.2d 250, 256 (6th Cir.1986). We believe that this is just such an "exceptional case."
 
 
 21
 Two lines of authority inform our result. The first line holds that a court of appeals must take notice of an intervening decision and apply the law in effect at the time the appeal is to be decided, unless doing so will result in manifest injustice. See, e.g., Bradley v. School Board, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974); Scarboro v. First National Bank of Nashville, 619 F.2d 621 (6th Cir.), cert. denied, 449 U.S. 1014, 101 S.Ct. 572, 66 L.Ed.2d 472 (1980). Here, taking notice of and applying Stachura is eminently fair, because Ratliff still will receive compensatory damages arising from mental distress, if any is found by the jury on remand, and for loss of pay; and appellants will escape paying a windfall recovery to which no plaintiff in any post-Stachura case will be entitled.
 
 
 22
 The second line holds that the Supreme Court's application of a new rule to the very case in which the rule is announced indicates conclusively that the Supreme Court intends the lower courts to apply the new rule retroactively. See Gurish v. McFaul, 801 F.2d 225, 227 (6th Cir.1986); Mulligan v. Hazard, 777 F.2d 340, 343 (6th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 2902, 90 L.Ed.2d 988 (1986); Smith v. General Motors Corp, 747 F.2d 372, 375 (6th Cir.1984) (en banc ).[5] In Stachura the Supreme Court applied the new rule announced therein to the case before it, reversing and remanding the case for a new trial on compensatory damages. Therefore, we should apply Stachura retroactively.
 
 
 23
 At least one case speaks directly to the point in dispute. In Key v. Rutherford, 645 F.2d 880 (10th Cir.1981), the plaintiff sued the City of Stroud, Oklahoma and several of the City's officers under 42 U.S.C. Sec. 1983, alleging that the defendants had unlawfully discharged him from his position as police chief in retaliation for his exercise of first amendment rights. The trial court instructed the jury that the City of Stroud was immune from damages if its officers had acted in good faith. The plaintiff did not object to that instruction. The jury returned a verdict in favor of all the defendants. The plaintiff then appealed.
 
 
 24
 During the pendency of the appeal, the Supreme Court squarely held in Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), that a municipality is not immune from damages simply because its officials acted in good faith. The plaintiff argued on appeal, therefore, that the Tenth Circuit should apply Owen retroactively and hold that the jury instructions constituted plain and obvious error warranting reversal and remand for a new trial, notwithstanding the fact that he failed to object to the instructions below. The Tenth Circuit agreed, holding that the case fell within the "interests of justice" exception to Fed.R.Civ.P. 51:
 
 
 25
 The trial court here did not have the benefit of the Owen decision when he formulated his instructions. On this record, the jury could have found in favor of the City of Stroud solely because of the good faith instruction. We believe the interests of justice are best served by remanding the case for a new trial as to the City of Stroud and the individual defendants in their official capacities in light of the holding in Owen.
 
 
 26
 Key, 645 F.2d at 883. In so holding, the Tenth Circuit observed that "[t]he general rule under these circumstances requires that, absent manifest injustice, the appeals court[s] take notice of an intervening decision and apply the law in effect at the time the appeal is to be decided." Id. (footnote omitted). The Tenth Circuit also noted that the municipal liability rule announced in Owen was not a clear break from precedent. Id. n. 3. Our case is on all fours with Key v. Rutherford, with whose reasoning and result we completely agree.
 
 
 27
 Thus, in sum, Bradley v. Richmond School Board and Smith v. General Motors and their progenies, and Key v. Rutherford, as well as the interest of fairness all support our creation of an exception to Fed.R.Civ.P. 51 permitting an appellant to challenge for the first time on appeal a jury instruction that was arguably correct when given but that is now clearly incorrect under a Supreme Court ruling issued during the pendency of the appeal. Under that exception, appellants here may contest the district court's jury instruction on compensatory damages even though they failed to object to that instruction below. Because the district court instructed the jury to consider, as a partial measure of compensatory damages, the intrinsic value and importance of the first amendment, the instruction constitutes an error "so obvious and prejudicial as to affect the fairness" of the trial. Gomez v. Great Lakes Steel Division, 803 F.2d at 256.
 
 
 28
 Accordingly, we VACATE the compensatory damages awards against the Board and the Superintendent and REMAND for a new trial on compensatory damages. However, as stated above, with respect to liability we AFFIRM the district court's denial of appellants' motion for a judgment notwithstanding the verdict.
 
 
 
 [1]
 Ratliff also alleged that the Board breached an oral contract and deprived him of a property interest without affording him due process of law. The district court dismissed those claims at the close of Ratliff's case-in-chief. Ratliff does not challenge those dismissals here
 
 
 [2]
 Ratliff does not appeal the remittitur of punitive damages
 
 
 [3]
 Stachura v. Truszkowski, 763 F.2d 211 (6th Cir.1985)
 
 
 [4]
 Fed.R.Civ.P. 51 provides, in pertinent part: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."
 
 
 [5]
 We feel compelled to note that this line of cases seems to conflict with Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), which holds that in a civil case the retroactivity question hinges on a case-by-case application of a three-pronged test: (1) whether the new rule is a clear break from precedent; (2) whether retroactive operation will promote the new rule's just effect in general; and (3) whether retroactive application will produce substantially inequitable results in the instant case. This conflict has generated confusion in our circuit concerning whether Smith v. General Motors establishes simply that the new rule announced and applied in DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), applies retroactively or establishes instead that every new rule which the Supreme Court applies to the case in which the rule is announced must be applied retroactively by the lower courts. Cf. Greyhound Lines Inc. v. White, 760 F.2d 278 (9th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 280, 88 L.Ed.2d 244, 244-45 (1985) (White, J., dissenting, arguing that the Supreme Court should resolve the circuit split concerning whether the Chevron analysis must be applied to ascertain whether DelCostello governs retroactively). For example, in holding that the fleeing felon rule announced in Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), applies retroactively, the panel decision in Carter v. City of Chattanooga, 803 F.2d 217 (6th Cir.), petition for rehearing en banc granted, (6th Cir. Dec. 9, 1986), exhaustively applied the Chevron test without even mentioning Smith v. General Motors. Moreover, this circuit has granted a petition for rehearing en banc in Carter even though the panel decision is clearly correct under the Smith v. General Motors test because the Supreme Court applied the new rule announced in Tennessee v. Garner to that case. Thus, the panel must have granted rehearing en banc only to decide whether the Chevron factors were analyzed properly, not whether the Chevron test should have been applied at all. Indeed, the petition for rehearing en banc does not even cite Smith v. General Motors and argues only that the Chevron factors were mishandled. Therefore, we hope that an occasion will soon arise for an en banc consideration of the proper relationship between Chevron and Smith v. General Motors. This is not such an occasion, however, because under either the Smith v. General Motors test or the Chevron test the Stachura rule on compensatory damages should be applied retroactively here