**Mack E. SCOTT, Plaintiff–Appellant,**

v.

**Norman STOUT, Tonia Martin; East Tennessee State University, Defendant–Appellees.**

No. 98–6001.

United States Court of Appeals, Sixth Circuit.

Jan. 18, 2001.

Before KRUPANSKY, BOGGS, and CLAY, Circuit Judges.

PER CURIAM.

Plaintiff–Appellant Mack E. Scott has challenged summary judgment entered in the United States District Court for the Eastern District of Tennessee in favor of Defendant–Appellees the East Tennessee State University ("ETSU"), its Vice–President of Student Affairs, Norman Stout, and former ETSU Student Body President Tonia Martin in his civil rights action commenced pursuant to 42 U.S.C. §§ 1981, 1985(3), and 2000d.

Upon consideration of the record in its entirety, the briefs of the parties, and the arguments of counsel, this court concludes that the trial court's findings of fact and conclusions of law are correct and in accordance with law.

Accordingly, it is ORDERED that the judgment of the District Court is AFFIRMED for the reasons expressed in Judge Curtis L. Collier's opinion.

BOGGS, Circuit Judge, concurring separately.

While I concur in the result reached by Judge Krupansky, I write separately to add a few more details. Plaintiff in this case is a disappointed office seeker in the Student Government at a State University. The case comes to our attention primarily on a claim that he was not just treated unfairly in the crucible of student politics, but that he was treated unfairly because of his race.

Initially, he focused primarily on the fact that he was not allowed to run for the post of Student Senator for a college unit that he did not attend, Kingsport University Center. This is the primary ground raised in his complaint (JA 12), and it is also the

basis on which he contested his non-election through the university court system. (See JA 34). The district court correctly held that there was no evidence to support a claim of racial discrimination in the application of this rule.

Later, however, plaintiff began to advance the claim that he had received a number of write-in votes that should have been counted, that those votes were not counted, and that the failure to count those votes was on account of racial bias. I believe that Judge Collier correctly held that there was no evidence of racial bias in the counting of votes, even if there were allegations that some votes properly cast for the plaintiff were not counted.

It is important to note that the accuracy of the vote count was not put in issue in a prompt fashion. The election was in April 1996. Scott filed his complaint in August 1996. By April 1997, a scheduling order directed all discovery to be completed by February 1998, with all plaintiff's Rule 26 disclosures to be made by May 15, 1998, and a trial date set of July 28, 1998.

The defendants moved for Summary Judgment on April 21, 1998. It was only on May 14 and 15, 1998, presumably in connection with the opposition to summary judgment that Scott would file on May 21, that four students gave affidavits stating that they had written in Scott's name for Senator in the College of Applied Sciences & Technology (CAST), the unit Scott did attend. In his own deposition, Scott asserted that he had written in his own name for Senator, but had not done so in any particular constituency. It is thus not surprising that this alleged vote was not recorded in the tally sheet of the Elections Committee. Scott had not previously claimed that he had sought or received any votes for the CAST post, even though he had been encouraged to run as a write-in candidate for that exact position (JA 60,

91). In fact, as the district judge noted. (JA 31), Scott's deposition denied that he had sought or received write-in votes except in Nursing, though his affidavit, filed later, contradicts this. As we have held in *Reid v. Sears, Roebuck,* 790 F.2d 453, 460 (6th Cir.1986), a later-filed affidavit cannot be used to create a genuine issue of material fact in contradiction to a witness's deposition.

Even if we take the student affidavits at face value, there is nothing in them, or in any of the other materials in the record, to link any such failure to count votes with any alleged racial bias against Scott. Indeed, one of the affidavits, from Kim Williams (JA 217) states that she also voted for Mark Beatty, not alleged to be a minority person, for the same position, and his name also does not appear on the tally sheets.

Unlike the dissent, I would hold that no adverse inference can be drawn from the failure of the student government or the university to produce the ballots, when this issue was first made salient only two years after the election, and no specific request for the ballots had been made. In addition, Tonia Martin, the President of the Student Government, stated in her own deposition that she recalled some write-ins for Scott (out of over 1000 ballots cast), but that she had no recollection of way they might not have been reflected on the tally sheets.

Under these circumstances, I think Judge Collier did not err in holding that there was insufficient evidence to convince a reasonable jury that there was racial bias involved in this student election dispute. Many election losers have some quarrel with the vote-counting procedures, but unless there is more than speculation as to the method and reasons behind their loss, summary judgment must be sustained.

CLAY, Circuit Judge, dissenting.

Because I believe that questions of fact remain for trial regarding Plaintiff Mack E. Scott's claim of race discrimination under Title VI, as well as his claims brought under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 42 U.S.C. § 1985(3), I respectfully dissent. Today's majority holding affirming United States District Court Judge Curtis Collier's decision to dismiss this case at the summary judgment stage ignores genuine issues of material fact as raised and supported by the evidence—evidence which must be viewed in the light most favorable to Plaintiff—in complete contravention of the standards set forth when adjudicating a Rule 56 motion. In other words, "the evidence [submitted by Plaintiff] presents sufficient disagreement to require submission to a jury" inasmuch as the evidence is not "so one-sided that [Defendants] must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Notably, the majority concludes that the district court's "findings of fact and conclusions of law are correct and in accordance with the law." However, when adjudicating a motion for summary judgment, it is inappropriate for a district court to make "findings of fact." Rather, the facts and any reasonable inferences drawn therefrom are to be viewed in the light most favorable to the nonmoving party to determine whether a genuine issue as to any material fact remains for trial. *See* Fed. R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*. 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). A genuine issue or dispute of fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *See Anderson*, 477 U.S. at 247–49. Such is the case here.

## A. Plaintiff's Title VI Claims

I disagree with the majority that the district court properly granted summary judgment to East Tennessee State University ("ETSU") on Plaintiff's claim for race discrimination under Title VI, 42 U.S.C. § 2000d, where Plaintiff came forward with sufficient evidence to demonstrate that a genuine issue of fact remains for trial as to whether the failure to count the votes that Plaintiff received for the position of senator representing the College of Applied Science and Technology was done intentionally because Plaintiff is African American. Although Defendants offered a colorably legit mate reason to rebut Plaintiff's contention that his name was intentionally omitted from the ballot for the position of senator from the Kingsport University Center ("KUC") campus, Defendants failed to come forward with a legitimate reason as to why the write-in votes which Plaintiff allegedly received for the position of senator from the College of Applied Science and Technology were not counted.

Indeed, Defendants' contention that the votes were not counted because Plaintiff's name was not written on the voting ballot in the proper fashion by voters is based upon pure speculation. For example. ETSU failed to come forward with the ballots in question indicating that they were filled out incorrectly; failed to come forward with affidavits from "vote counters" to indicate that the votes were not counted because the ballots were filled out incorrectly; and failed to come forward with any written policy indicating that write-in votes must be indicated in a certain fashion on the ballot or the votes will not be counted in the final tally.

On the other hand, Plaintiff came forward with affidavits from students stating that they in fact wrote in Plaintiff's name to serve as a senator from the College of

Applied Science and Technology on their voting ballots. Specifically, Plaintiff came forward with affidavits from four students—Derek Blix, Kim Williams, Chadwick Lincoln Lamar Brown, and Bonnie Silvers—each indicating that they wrote Plaintiff's name in under the College of Applied Science and Technology on their voting ballots with the intention that their vote would be counted for Plaintiff to serve as a senator from that college. In fact, one of the affiants, Bonnie Silver, stated that she had written in other candidates for senator positions in past elections, that she wrote-in Plaintiff's name for the open seat available under the College of Applied Science category, and that there was no announced requirement that a candidate had to be written in in a certain fashion.

Plaintiff also came forward with his own affidavit claiming that he was being discriminated against for, among other things, voicing his opinion regarding what appeared to be racist activities by certain members of the Student Government Association ("SGA") and successfully organizing a student chapter of the NAACP at ETSU's Johnson City campus, along with his testimony that he wrote himself in to serve as senator on his own voting ballot. This evidence, coupled with the fact that Plaintiff was the only African–American candidate running for a senate position at ETSU, and the apparent fashion in which Defendants railroaded Plaintiff's name from appearing on the ballot in the first place—i.e., holding an election committee meeting while Plaintiff was in Africa on an ETSU sponsored seminar and then submitting the voting ballot to the printer before Plaintiff returned so as to prevent Plaintiff from placing his name as a candidate from the College of Applied Science and Technology—creates a genuine issue as to whether the write-in votes that Plaintiff allegedly received for the position of senator from the College of Applied Science and Technology were intentionally not counted because of Plaintiff's race. This is particularly so where although three open senate seats were available for the College of Applied Science and Technology, only two senators were elected: one by having his name set forth on the preprinted ballot (James Barker), and the other by having succeeded as a write-in candidate (Brad Singletary). Accordingly, it appears as though if even one of the write-in votes which Plaintiff allegedly received for the position of senator from the College of Applied Science and Technology had been counted, Plaintiff would have won the open senatorial seat.

Therefore, I would reverse the district court's grant of summary judgment to ETSU on this issue. Unlike the case of *Buchanan v. City of Bolivar, Tennessee,* the case relied upon by the district court in rendering it's decision, where the plaintiff "merely asserted, without any supporting documentation or evidence, that her son 'would not have been arrested had he been a caucasian student,'" 99 F.3d 1352, 1357 (6th Cir.1996). Plaintiff in the instant case came forward with affidavits from students who indicated that they in fact voted for Plaintiff to serve as a senator from the College of Applied Science and Technology, and Defendants have failed to rebut this evidence to support a legitimate reason for their failure to count the votes.

B. Plaintiff's § 1981, § 1983, and § 1985(3) Claims

I agree with the district court that ETSU, as an arm of the state of Tennessee, is immune from suit under 42 U.S.C. § 1981, § 1983, and § 1985(3). *See Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). However, I disagree with the district court's conclusion that assuming Plaintiff could prove a violation by Martin and/or Stout under

any of these provisions. Plaintiff has failed to prove that Martin and Stout are not entitled to qualified immunity inasmuch as Plaintiff has failed to produce any evidence that these individuals violated a right so clearly established at the time that any official in these positions would have clearly understood that they were under an affirmative duty to refrain from such conduct. Plaintiff alleged that Martin and Stout violated his right to free speech and association under the First Amendment; his right to equal protection under the law for exercising his First Amendment freedoms and to be treated as other persons similarly situated under the Fourteenth Amendment; and his right to due process to protect one's property interests under the Fourteenth Amendment.

As a rule, " 'governmental officials performing discretionary tasks generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Myers v. City of Cincinnati,* 979 F.2d 1154, 1156 (6th Cir. 1992) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). At the summary judgment stage of the proceedings, if there is a factual dispute as to an issue on which the question of qualified immunity turns, or if the undisputed facts show that the defendant's conduct violated clearly established rights, then the motion should be denied. *Cameron v. Seitz,* 38 F.3d 264, 273 n. 2 (6th Cir.1994). Here, because questions of fact remain for trial regarding Plaintiff's free speech claim under the First Amendment as well to his equal protection claim under the Fourteenth Amendment. Martin and Stout were not entitled to summary judgment on the basis of qualified immunity. *See* 38 F.3d at 273 n. 2.

Regarding the First Amendment claim, Plaintiff contends that when Stout and Martin intentionally eliminated his name from the ballot and refused to count his write-in votes, they were retaliating against him for "fil[ing] a race discrimination lawsuit against the University, ... oppos[ing] them politically during the 1995–96 school year .... publicly advocat[ing] the causes of black and other minority student groups in the face of majority opposition in the SGA .... [and] refus[ing] to accede to the racially motivated demands of a white, conservative Kingsport University Center Student Advisory Council that he relinquish his particular SGA Senate seat." *See* Plaintiff's Brief on Appeal, at 34. Plaintiff analogizes to the directive provided by this Court in *Ratliff v. Wellington Exempted Village Schools Board of Education,* 820 F.2d 792, 795 (6th Cir.1987) for analyzing an employee's claim that an employer took adverse action against him in retaliation for his exercise of First Amendment rights. The analytical framework provided by the *Ratliff* Court is as follows:

(1) The threshold question is whether the plaintiff's conduct deserves constitutional protection.

(2) If the court finds that an employee's conduct was protected by the first amendment, the finder of fact must determine whether the action taken was because he engaged in the protected conduct. The employee's protected conduct must be a "substantial factor" or "motivating factor" in the employer's decision.

(3) Once the employee meets this burden, the burden shifts to the employer to prove that the action the employee is complaining about would have taken place absent the protected conduct.

820 F.2d at 795.

Under *Tinker v. Des Moines Indep. Community School District,* it is well-es-

tablished that a university student cannot be punished for the content of his speech as long as that speech or conduct does not disrupt the classroom. *See* 393 U.S. 503, 513, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *Salehpour v. University of Tenn.*, 159 F.3d 199, 208 (6th Cir.1998). Therefore, Plaintiff met the first prong of the *Ratliff* test. Furthermore, a question of fact remains for trial as to whether Plaintiff's actions of filing his civil rights race discrimination complaint against Defendants, promoting a chapter of the NAACP onto campus for the first time, speaking out on minority rights, and refusing to relinquish his seat at the KUC campus were a substantial factor in Stout's and Martin's alleged failure to count the write-in votes that Plaintiff received for the senator position from the College of Applied Science and Technology, where Stout and Martin have failed to come forward with evidence to support a legitimate reason for their failure to do so. *See Ratliff*, 820 F.2d at 796 (holding that "[t]he evidence contrasting the Board's pre-speech and post-speech attitudes towards Ratliff, combined with the evidence of post-speech vindictiveness verbally communicated to key players, clearly suffices to permit a reasonable inference that the speech motivated the Board not to renew Ratliff's employment contract"). Finally, Defendants have failed to come forward with evidence to show a legitimate reason for their failure to count the votes that Plaintiff allegedly received for the College of Applied Science and Technology senator position. Accordingly, genuine issues of material fact remains for trial as to whether Stout and Martin retaliated against Plaintiff for exercising his First Amendment rights which were clearly established at the time. *See Cameron*, 38 F.3d at 273 n. 2.

Similarly, questions of fact remain regarding Plaintiff's claim that Stout and Martin violated his Fourteenth Amendment right to equal protection under the law when (1) Stout and Martin "retaliat[ed] against him for his speech, politics, and associational activities on behalf of minority student groups;" and (2) Stout and Martin deprived Plaintiff of the right granted to all other qualified student candidates under the applicable SGA rules and regulations to have his name appear on the official SGA ballot and to have his write-in votes tallied and reported.

" 'To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class.' " *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir.1990) (quoting *Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir.1989) (*en banc*)). Here, it is undisputed that Plaintiff is a member of a protected class inasmuch as he is an African American. *See, e.g., City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). To the extent that evidence exists on the record to show that Defendants counted the write-in votes received by white candidates, but did not count the votes received by Plaintiff – the only black candidate on the ballot – a question of fact remains for trial as to whether Defendants violated Plaintiff's equal protection right to be treated as white candidates similarly situated. Defendants have failed to come forward with evidence to support their purported reason for failing to count the write-in votes that Plaintiff allegedly received for the position of senator from the College of Applied Science and Technology and why the alleged reason is narrowly tailored to achieve a compelling government interest. *See Purisch v. Tennessee Tech. Univ.*, 76 F.3d 1414, 1424 (6th Cir.1996). Accordingly, genuine issues of material fact remain for trial as to whether Defendants violated

Plaintiff's right to be considered for write-in candidacy to the student government in the same fashion as those write-in candidates who were white, and where Plaintiff's right to be treated equal to white individuals similarly situated was clearly established at the time.

However, I agree that Plaintiff failed to prove that he had a clearly established property interest at the time for which Defendants would have known they were intentionally depriving Plaintiff under the due process clause of the Fourteenth Amendment. *See, e.g., Christophel v. Kukulinsky,* 61 F.3d 479, 486 (6th Cir.1995); *Woolsey v. Hunt,* 932 F.2d 555, 564 (6th Cir.1991). Therefore, I would affirm the grant of summary judgment to Martin and Stout on this claim.

For the above stated reasons, a jury should be allowed to decide these factual disputes which Plaintiff has supported by documentary evidence: I therefore respectfully dissent from the majority opinion affirming the district court's order granting Defendants summary judgment.